**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **BTL Industries, Inc.,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  23-673 |
| **THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,** | |
| **Defendants.** | |

## VERIFIED COMPLAINT

Plaintiff BTL Industries, Inc., ("Plaintiff" or "BTL"), by counsel, alleges as follows for its Verified Complaint against the Defendant Unincorporated Associations identified in Schedule A (collectively "Defendants").

## NATURE OF THE SUIT

1.      This is a civil action for trademark infringement, trademark counterfeiting, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq*., including 35 U.S.C. § 271.

2.      Plaintiff files this action to combat online counterfeiters who trade upon its world-renowned reputation by selling unauthorized and unlicensed counterfeit medical devices (the "Counterfeit BTL Devices") using counterfeit versions of Plaintiff's federally registered trademarks and infringing Plaintiff's patents.

3.     Defendants create hundreds of online product listings and design them to appear as though they are selling genuine BTL-manufactured devices, while instead selling Counterfeit BTL Devices to unknowing consumers. Defendants attempt to avoid liability by concealing their identities and the full scope and interworking of their counterfeiting operations. Plaintiff is thus forced to file this action to combat Defendants' unauthorized use of its registered trademarks and patents, as well as to protect unknowing consumers from purchasing non-FDA approved and inferior Counterfeit BTL Devices. Plaintiff has been, and continues to be, irreparably damaged through infringement and tarnishment of its valuable trademarks and patents as a result of Defendants' willful actions, and seeks injunctive and monetary relief.

## JURISDICTION AND VENUE

4.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*. and the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, pursuant to 28 U.S.C. § 1338(a)-(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1121.

5.     Plaintiff's claims against Defendants for counterfeiting, trademark infringement, false designation of origin, and patent infringement are based on Defendants' misuse of Plaintiff's trademarks and patents to market and sell Counterfeit BTL Devices to consumers in this District, and the use of instrumentalities in the District to promote and sell Counterfeit BTL Devices including through use of online marketplaces, such as eBay, Wish, and AliExpress.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Virginia and this District, through at least the Online Marketplace Accounts/Internet Stores identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are

2

seeking to do business with this District's residents by operating one or more commercial Defendant Internet Stores through which Virginia residents are misled to purchase counterfeit products that infringe BTL's trademarks and patents. Each of the Defendants has targeted sales to Virginia residents by operating online stores that offer shipping to the United States, including Virginia and this District, and accepting payment in U.S. dollars. Plaintiff confirmed that Defendants ship their Counterfeit BTL Devices to this District by requesting shipping information from each of the Defendants' Internet Stores. Each of the Defendants is committing tortious acts in Virginia, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Virginia.

## PARTIES

### The Plaintiff

7.      Plaintiff is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

8.      Plaintiff specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new FDA-cleared devices and developed protocols for using the technology for aesthetic therapies.

9.      The first such device that BTL developed was the EMSCULPT device, a standalone, non-invasive, aesthetic body-contouring device. *See* **Exhibit 1** (BTL Press Release). BTL's patent-protected EMSCULPT device uses high-intensity electromagnetic energy to induce powerful muscle contractions in a patient. BTL has further developed specifically configured EMSCULPT applicators, tailoring each type of applicator to a specific target area.

3

10.     The EMSCULPT device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result in a non-invasive method of toning muscle and body sculpting. *See* https://bodybybtl.com/solutions/emsculpt-neo/.

11.     In June 2018, BTL received clearance from the FDA for its EMSCULPT device with large applicators and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, and for strengthening, toning, and firming of buttocks and thighs. *See* https://bodybybtl.com/solutions/emsculpt-neo/. In October 2018, BTL received FDA clearance for an additional indication for the improvement of muscle tone and firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for the EMSCULPT device with both large and small applicators for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, strengthening, toning, and firming of buttocks, thighs, and calves, as well as improvement of muscle tone and firmness, for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller treatment areas.

12.     In September 2022, BTL launched the EMFACE device, the world's first non-invasive device with hands-free applicators that through BTL's patented technology, simultaneously treats facial skin, by heating the skin and increasing the levels of collagen, and facial tissues by selectively contracting muscles and increasing their density and quality of muscle structure.

13.     BTL markets and distributes its non-invasive EMSCULPT and EMFACE devices to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMSCULPT and EMFACE devices that

incorporate its proprietary technology, muscle toning protocols, and applicators in the United States.

14.     BTL denotes its products and services that feature this technology with various trademarks, including the following federally registered trademarks, collectively referred to as the "BTL Trademarks":

**BTL Trademarks**

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 5572801 | EMSCULPT | October 2, 2018 | 66A | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for the treatment of the nasopharynxs including inhalers and nasal irrigators; massage apparatus; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 6373947 | EMSCULPT NEO | June 1, 2021 | October 17, 2020 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment of sexual dysfunction, gynecological treatment and pelvic floor treatment. |

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 6062248 | EMTONE | May 26, 2020 | 44E | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; massage apparatus; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms |
| 6891006 | EMFACE | November 1, 2022 | April 4, 2022 | Class 10: Medical apparatus generating electromagnetic, magnetic, electrical, radiofrequency or thermal energy for use in skin treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, tightening of skin, reduction of wrinkles, reduction of scars, rejuvenation of skin, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; therapeutic facial masks; facial toning machines for cosmetic use; medical apparatus particularly apparatus for pain management, elimination of muscle spasms. |

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 5915636 | EM | November 19, 2019 | January 8, 2019 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence. |
| 6206098 | **EM** | November 24, 2020 | July 2018 | Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence. |

9

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 5688619 | HIFEM | March 5, 2019 | 44E | Medical and aesthetic apparatus and instruments, in particular non-invasive medical and surgical apparatus and instruments generating electrical, magnetic, electromagnetic, mechanical or thermal therapeutic energy used to stimulate gynecological and urological muscles and to increase strength and physical performance of gynecological and urological muscles for health, medical, and aesthetic purposes; medical and surgical apparatus and instruments for use in medical, surgical and aesthetic medicine procedures, namely, body shaping, fat removal, circumference reduction of waist, leg, arm, chest, neck, back, buttock, thigh, breast, saddlebags, and abdomen, tightening of skin, cellulite reduction, skin rejuvenation, wrinkle reduction, scar reduction, reduction of stretch marks; electric stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological medical and surgical apparatus and instruments for examining and treating reproductive organs, bladder, rectum; body rehabilitation apparatus for medical purposes; beds specially made for medical purposes |

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 4750101 |  | June 9, 2015 | 66A | Physiotherapy apparatus in the nature of apparatus for electrotherapy, laser therapy, ultrasound therapy, magnetotherapy, and shockwave therapy, all for electrical nerve and muscle stimulation, infrared heat, wound healing, pain therapy, and treatment of inflammation; body rehabilitation apparatus for medical purposes; esthetic massage apparatus; hydrotherapy massage apparatus; medical and veterinary diagnostic apparatus and instruments, namely, electrocardiographs, heart monitors, spirometers, and blood pressure monitors; Medical devices for nonsurgical cosmetic treatments; medical devices for body toning and body shaping, tightening of skin, treatment of skin laxity, wrinkles, rhytides, and cellulite, and fat removal; lymphatic drainage equipment, namely, massage apparatus and lasers for medical use |

15.    Plaintiff has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL trademarks are validly registered in the United States and are in full force and effect. True and correct "status" copies of these registrations, obtained from the Trademark Status Document Retrieval (TSDR) database of the United States Patent and Trademark Office are attached hereto as **Exhibits 2-9**. The registrations constitute *prima facie* evidence of the validity of the BTL Trademarks and of BTL's exclusive right to use the BTL Trademarks pursuant to 15 U.S.C. § 1057(b).

16.     The BTL trademarks perform an important source-identifying function for BTL's aesthetic body-contouring devices like the EMSCULPT and associated treatment services. The BTL Trademarks signify to purchasers that the aesthetic devices come from BTL. The BTL Trademarks are inherently distinctive and are associated with BTL's innovative aesthetic devices that have acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-mouth promotion by consumers. In addition, BTL has expended significant time, money, and resources in developing, marketing, advertising, promoting, and selling its products and services under its trademarks, including the BTL Trademarks, in the United States. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

17.     BTL's brand reputation under the BTL trademarks as a market success is a by-product of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with the following patents, which are listed on its website at www.btlnet.com/patents.

**BTL Patents**

18.     On November 19, 2019, the United States Patent and Trademark Office (USPTO) duly and lawfully issued U.S. Patent No. 10,478,634 (the "634 patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the '634 Patent is attached hereto as **Exhibit 10**. The '634 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '634 Patent, including equitable relief and damages.

19.     On November 3, 2020, the USPTO duly and lawfully issued U.S. Patent No. 10,821,295 B1 (the "'295 Patent"), entitled "Aesthetic Method of Biological Structure and

Treatment by Magnetic Field." A true and correct copy of the '295 Patent is attached hereto as **Exhibit 11**. The '295 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '295 Patent, including equitable relief and damages.

**The Defendants**

20.     Defendants are individuals and business entities who, upon information and belief, reside  in China, and elsewhere outside the United States. Defendants conduct business throughout the United States, including within the State of Virginia and this Judicial District, through the operation of online marketplaces, such as eBay, Wish, and AliExpress. Each Defendant targets the United States, including Virginia, and has offered to sell and continues to offer to sell Counterfeit BTL Devices to consumers within the United States, including the State of Virginia and this District.

21.     On information and belief, Defendants knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products using the BTL Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Defendants each use similar or the same pictures and descriptions of the Counterfeit BTL Devices in their online marketplaces.

22.     Defendants use various tactics to conceal their identities and the full scope of their counterfeiting operation making it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

23.     Unfortunately, the success of BTL has resulted in significant counterfeiting of its devices. Consequently, Plaintiff has instituted a worldwide anti-counterfeiting program designed

to regularly investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. Despite Plaintiff's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate nearly $500 billion in global online sales annually.[1] According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion.[2] Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

24.     Recently, Plaintiff became aware of Defendants' online sales of the Counterfeit BTL Devices, and strongly suspected such goods were counterfeit. Defendants were selling these counterfeit goods at substantially lower prices than the genuine BTL devices. Plaintiff reviewed offerings from each of the Defendant Internet Stores to determine their authenticity. Copies of the counterfeit product offerings from the Defendant Internet Stores on eBay, Wish, and AliExpress are attached as **Exhibits 12, 13,** and **14** respectively. This review led to the determination that the products offered by the Defendant Internet Stores were, in fact, Counterfeit BTL Devices. Furthermore, the U.S. Food and Drug Administration has not approved the Counterfeit BTL

---

[1] *See* Rachel Jones, "The Impact Of Fakes And How To Combat Them" February 8, 2022, https://www.forbes.com/sites/forbesbusinesscouncil/2022/02/08/the-impact-of-fakes-and-how-to-combat-them/ (last accessed May 3, 2023).

[2] *See* Homeland Security, "Intellectual Property Rights Seizure Statistics: Fiscal Year 2021" September 29, 2022, https://www.cbp.gov/document/annual-report/fy-2021-ipr-seizure-statistics.

Devices for use on humans. Accordingly, further sales of the Counterfeit BTL Devices not only harms BTL's reputation, but potentially pose a hazardous threat to the consumers as well.

25.     On information and belief, Defendants reside in China and utilize Defendant Internet Stores to sell Counterfeit BTL Devices. Plaintiff discovered the Defendants by filtering the results on the seller platforms to include results for Defendants that were based in China.

26.     On information and belief, Defendants act in concert to make and distribute the Counterfeit BTL Devices to the United States. These tactics include similar pricing structures, similar descriptions and images of the Counterfeit BTL Devices, and similar payment methods.

27.     Defendants offered to ship the goods into this Judicial District. Images of the shipping page from each of the Defendant Internet Stores are attached as **Exhibits 15-17**.

28.      Plaintiff has inspected the product offerings by Defendants and has determined that they are counterfeit. Defendants' product listings for the Counterfeit BTL Devices all use the BTL Trademarks and/or confusingly similar marks, such as EMS SCULPT, EMSLIM, and HIFM, to promote the Counterfeit BTL Devices.

29.     On information and belief, Defendants actively encourage, promote, distribute, provide instructions for, and support the use the Counterfeit BTL Devices by its customers in a manner that directly infringes, either literally or under the doctrine of equivalents, at least one of the BTL Patents, as specified in Schedule A.

30.     On information and belief, the Counterfeit BTL Devices that infringe the '634 patent (the "Counterfeit EMSCULPT Devices") all use the same or substantially the same technology as the '634 patent. The product listings for the Counterfeit EMSCULPT Devices use identical or substantively identical language, photographs, and other promotional material to describe the underlying technology for each of the Counterfeit EMSCULPT Devices.

31.     On information and belief, the Counterfeit EMSCULPT Devices include or perform each and every limitation of at least one claim of the '634 patent, either literally or under the doctrine of equivalents. By making, offering to sell, selling, and/or importing into the United States the Counterfeit EMSCULPT Devices, Defendants have directly infringed, and continue to directly infringe, literally or by the doctrine of equivalents, one or more claims of the '634 patent under 35 U.S.C. § 271(a).

32.     On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the Counterfeit EMSCULPT Devices by their customers in a manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the '634 patent under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers will commit acts in such a manner as to directly infringe the '634 patent.

33.     On information and belief, the Counterfeit BTL Devices that infringe the '295 patent (the "Counterfeit EMFACE Devices") all use the same or substantially the same technology as the '295 patent. The product listings for the Counterfeit EMFACE Devices use identical or substantively identical language, photographs, and other promotional material to describe the underlying technology for each of the Counterfeit EMFACE Devices.

34.     On information and belief, the Counterfeit EMFACE Devices include or perform each and every limitation of at least one claim of the '295 patent, either literally or under the doctrine of equivalents. By making, offering to sell, selling, and/or importing into the United States the Counterfeit EMFACE Devices, Defendants have directly infringed, and continue to directly infringe, literally or by the doctrine of equivalents, one or more claims of the '295 patent under 35 U.S.C. § 271(a).

35.     On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the Counterfeit EMFACE Devices by their customers in a manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the '295 patents under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers will commit acts in such a manner as to directly infringe the '295 patent.

36.     Defendants design the Defendant Internet Stores so that they appear to unknowing consumers to be legitimate entities selling genuine BTL devices. Defendants perpetuate the illusion of legitimacy by purporting to offer "customer service" and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Plaintiff has not licensed or authorized Defendants to use any of the BTL Trademarks, and none of the Defendants are authorized retailers of genuine BTL devices. For example, the PODN Official Store product listing contains the following image, in an effort to legitimize its counterfeit devices:



37.     Defendants also deceive unknowing consumers by using the BTL Trademarks and confusingly similar marks without authorization within the content of their seller listings in order to attract consumers searching for genuine BTL devices. On information and belief, Defendants show the BTL Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for genuine BTL devices.

38.     Further, on information and belief, Defendants have gone to great lengths to conceal their identities and often use multiple fictitious names, business names, and addresses to register and operate their network of Defendant Internet Stores. And so far, these actions have been successful because, despite Plaintiff's good faith attempts to identify Defendants, Plaintiff is unable to reliably determine any of the Defendants' identities. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. For example, many of the Defendants operate under non-distinct names like Shop912561127 Store, Shop1102193393 Store, Shop1102603880 Store, and Shop1102442339 Store. Others, like BodyBeautyful Store include many different business names, including BodyfulBeauty Store, Guangzhou Bodyful Electronic Technology Co., Ltd., and Guangzhou Bodyful Beauty Electronic Technology Co., Ltd., within their product listing. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

39.     Furthermore, the information Defendants provide to consumers is often inaccurate and untraceable. For example, as part of Plaintiff's enforcement efforts, it received correspondence from a U.S. consumer that purchased a Counterfeit BTL Device from Defendant bbexcellene. See

**Exhibit 18**. The consumer informed Plaintiff that bbexcellene's name was Mr. Azure, his email address was nanpaca@outlook.com, his phone number was (718)454-2809) and that the device was shipped from an address in New Jersey. Plaintiff retained a private investigator to learn the true identity of Mr. Azure, but the results of the private investigation revealed that the listed email address and phone number were inactive, and that the New Jersey address was not connected with a Mr. Azure. The private investigation did not reveal any other identifying information regarding Defendant bbexcellene.

40.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

41.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

42.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts, PayPal accounts, and Alipay accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their accounts to offshore bank accounts outside the jurisdiction of this Court.

43.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the BTL Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit BTL Devices that infringe the BTL Patents into the United States, and Virginia, over the Internet. The Defendant Internet Stores offer shipping to the United States, including Virginia.

44.     Defendants' use of the BTL Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit BTL Devices that infringe the BTL Patents, including the offering for sale of Counterfeit BTL Devices in the United States, including Virginia, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## JOINDER IS APPROPRIATE

45.     Joinder is appropriate because, on information and belief, Defendants' sale of Counterfeit BTL Devices gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or series of transactions or occurrences. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Counterfeit BTL Devices. For example, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of, and/or sell and otherwise distribute the Counterfeit BTL Devices.

46.     As part of Plaintiffs' enforcement efforts, it has obtained multiple counterfeit devices that were originally sold from various sellers located in China. At least three of these devices, were sold by one of the Defendants identified in Schedule A. On information and belief, all of these devices were manufactured by the same source. Despite the devices originating from different sellers and differing in appearance, these devices used the same connectors for their applicators. *See* **Exhibit 19** (photographs of various devices obtained by Plaintiff that resemble

those sold by Defendants and all use the same connectors). On information and belief, there is no business reason for independent sellers to manufacture their own unique devices with the same applicator connectors. Further, Plaintiff sells its devices with a manufacturer sticker that lists its Hertfordshire address. Many of the devices that Plaintiff obtained display a sticker with a similar appearance, but they all read "Hertfondshirt" instead of Hertfordshire. See *Id.*

47.     It is also well recognized that China-based counterfeiters typically work in a conspiracy to achieve larger market shares and faster production. For example, a Forbes article explained that "the whole [Chinese counterfeiting] system is cooperative, based on the concept of *gongban*, which roughly translates to a public bowl. Meaning, people want to share… [s]o people are starting to share and that turns out to drive the whole industry to move so fast."[3]

48.     In this case, Defendants sell the Counterfeit BTL Devices using the same Internet platforms, such as eBay, Wish, and AliExpress. The Defendant Internet Stores also describe the Counterfeit BTL Devices using similar descriptions and pictures.

## COUNT I - TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

49.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 48.

50.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of the BTL Trademarks in connection with the sale, offering for

---

[3] Wade Shepard, "Amazon and Ebay Opened Pandora's Box Of Chinese Counterfeits And Now Don't Know What To Do," Oct 28, 2017, https://www.forbes.com/sites/wadeshepard/2017/10/28/amazon-and-ebay-opened-pandoras-box-of-chinese-counterfeits-and-now-dont-know-what-to-do/#24b855c46a25 (last accessed November 13, 2019).

sale, distribution, and/or advertising of counterfeit and infringing goods. The BTL Trademarks are distinctive marks.

51.     Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the BTL Trademarks without Plaintiff's permission.

52.     Plaintiff is the exclusive licensee of the BTL Trademarks. The United States registrations for the BTL Trademarks (**Exhibits 2-9**) are in full force and effect. Upon information and belief, Defendants have knowledge of BTL's rights in their Trademarks, and are willfully infringing and intentionally using unauthorized versions of the BTL Trademarks. Defendants' willful, intentional, and unauthorized use of the BTL Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Counterfeit BTL Devices among the general public.

53.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     Plaintiff has no adequate remedy at law and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputations and the goodwill of the BTL Trademarks.

55.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit BTL Devices.

## COUNT II- FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

56.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 55.

57.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit BTL Devices has created, and is creating, a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit BTL Devices by Plaintiff.

58.     By using the BTL Trademarks on the Counterfeit BTL Devices, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit BTL Devices.

59.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit BTL Devices to the general public involves the use of the BTL Trademarks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

60.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputations and the associated goodwill of the BTL Trademarks.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 10,478,634 (35 U.S.C. § 271)

61.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 60.

62.     The '634 patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary Claim 1 of the patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt

holds the first applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying

magnetic field; and

applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region,

wherein the time-varying magnetic field is applied to the body region with a magnetic flux

density sufficient to cause a muscle contraction in the body region.

63.     Defendants, as specified in column 5 of Schedule A, have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 patent by making, using, offering to sell, selling, or importing the Counterfeit EMSCULPT Devices in the United States and by encouraging, promoting, and instructing customers to use at least these devices in a manner that directly infringes at least claim 1 of the '634 patent.

64.     Defendants have and continue to encourage, promote, and instruct customers to perform the preamble of claim 1 of the '634 patent, which recites "[a] method for toning muscles in a patient using time-varying magnetic fields." The product listing pages for the Counterfeit EMSCULPT Devices encourage, promote, or instruct customers to use the devices in a manner that tones a patient's muscles using time-varying magnetic fields. For example, many of the product listings incorporate the following image, or  a similar variation thereof, that promotes the use of the Counterfeit EMSCULPT Device in a manner that tones a patient's muscles using time-varying magnetic fields.



65. Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "placing the first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock." On information and belief, the Counterfeit EMSCULPT Devices include at least one applicator comprising a magnetic field generating coil. The product listing pages for the Counterfeit EMSCULPT Devices indicate that the Counterfeit EMSCULPT

Devices include at least one applicator, which, on information and belief, comprises a magnetic field generating coil.

66.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." The product listing pages for the Counterfeit EMSCULPT Devices represent that the devices come with elastic and length-adjustable belts that fasten the applicator to a patient's body region. Ex. 12-14.

67.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field." On information and belief, the Counterfeit EMSCULPT Devices include power supplies which transmit energy to the applicators, which in turn, generate time-varying magnetic fields. The product listings for the Counterfeit EMSCULPT Devices, for example, reference power supplies or power chords that connect to a power supply, which, on information and belief, supply power to the applicators so they may generate time-varying magnetic fields.

68.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "applying a magnetic fluence of 50 T $cm^2$ to 1,500 T $cm^2$ to the body region." On information and belief, the Counterfeit EMSCULPT Devices generate and deliver magnetic fields that vary in area density depending on the treatment mode and parameters.

69.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction to the body region." The product listings of the Counterfeit EMSCULPT Devices promote and advertise the Counterfeit

EMSCULPT Devices ability to generate magnetic fields sufficient to cause muscle contractions in the targeted body region.

70.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 patent by making, using, offering to sell, selling, or importing at least the Counterfeit EMSCULPT Devices in the United States and by encouraging customers to use at least the Counterfeit BTL Devices in a manner that directly infringes at least claim 1 of the '634 patent. On information and belief, Defendants were aware of the '634 patent since before the filing of the Complaint. On information and belief, Defendants knew that the Counterfeit EMSCULPT Devices are designed for a use that infringes one or more claims of the '634 patent, and the Counterfeit EMSCULPT Devices lack substantial non-infringing use. On information and belief, Defendants have, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '634 patent and knowledge that its acts are encouraging infringement.

71.     Defendants' indirect infringement of the '634 patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '634 patent before the filing of this Complaint and have infringed the '634 patent willfully and deliberately and with such knowledge that such conduct violates 35 U.S.C. § 271.

72.     Defendants' indirect infringement of the '634 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

73.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 patent.

## COUNT IV- INFRINGEMENT OF U.S. PATENT NO. 10,821,295
## (35 U.S.C. § 271)

74.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 73.

75.     The '295 patent is directed towards a device for producing a time-varying magnetic field for treatment. Exemplary Claim 1 of the '295 patent recites:

A method of patient treatment comprising:

charging an energy storage device and providing energy from the energy storage device to a magnetic field generating device to generate a time-varying magnetic field;

applying the time-varying magnetic field having a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 T and 7 T to muscle fibers, neuromuscular plates, or peripheral nerves innervating muscle fibers within a body region of a patient such that a muscle is caused to contract;

generating radiofrequency waves by an HF generator and providing radiofrequency waves in a range of 500 kHz to 3 GHz to a radiofrequency electrode; and

applying the radiofrequency waves to the patient;

wherein the magnetic field generating device and the radiofrequency electrode are disposed in an applicator.

76.     The Counterfeit EMFACE Devices include or perform each and every limitation of at least claim 1 of the '295 patent, either literally or under the doctrine of equivalents.

77.     Defendants, as specified in column five of Schedule A, have and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '295 patent by making, using, offering to sell, selling, or importing the Counterfeit EMFACE Devices in the United States.

78.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '295 patent, by encouraging, promoting, and instructing customers to use the Counterfeit EMFACE Devices in a manner that directly infringes at least claim 1 of the '295 patent.

79.     Defendants have and continue to encourage, promote, and instruct customers to perform the preamble of claim 1 of the '295 patent, which recites "[a] method of patient treatment." The product listings for the Counterfeit EMFACE Devices encourage, promote, or instruct customers to use the device as a non-invasive facial treatments.

80.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "charging an energy storage device and providing energy from the energy storage device to a magnetic field generating device to generate a time-varying magnetic field." The product listings for the Counterfeit EMFACE Devices indicate that the devices generate a time-varying magnetic field. On information and belief, a reasonable opportunity for further investigation or discovery will show that the Counterfeit EMFACE Devices charge an energy storage device in generating the time-varying magnetic fields.

81.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "applying the time-varying magnetic field having a repetition rate in range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 T and 7 T to muscle fibers, neuromuscular plates, or peripheral nerves innervating muscle fibers within a body region of a patient such that a muscle is caused to contract." On information and belief, the Counterfeit EMFACE Devices generate and deliver magnetic fields that vary in area density depending on the treatment mode parameters. The product listings for the Counterfeit EMFACE Devices, for

example, represent that the devices are configured to follow multiple different treatment modes or parameters.

82.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "generating radiofrequency waves by an HF generator and providing the radiofrequency waves in a range of 500 kHz to 3 GHz to a radiofrequency electrode." On information and belief, the Counterfeit EMFACE Devices generate and deliver radiofrequency waves that vary in range to a radiofrequency electrode. The product listings for the Counterfeit EMFACE Devices promote the devices as using radiofrequency technology.

83.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "applying the radiofrequency waves to the patient; wherein the magnetic field generating device and the radiofrequency electrode are disposed in an applicator." On information and belief, the Counterfeit EMFACE Devices include at least one applicator that combines both the magnetic field generating device and the radiofrequency waves. For example, many of the product listings incorporate the following image, or a similar variation thereof, that promotes the use of an applicator to apply both the magnetic pulses and radiofrequency waves to the patient.



84.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '295 patent by making, using, offering to sell, selling, or importing at least the Counterfeit EMFACE Devices in the United States and by encouraging customers to use the Counterfeit EMFACE Devices in a manner that directly infringes at least claim 1 of the '295 patent. On information and belief, Defendants were aware of the '295 patent since before the filing of this Complaint. On information and belief, Defendants have known that the Counterfeit EMFACE Devices are designed for a use that infringes one or more claims of the '295 patent, and the Counterfeit EMFACE Devices lack a substantial non-infringing use. On information and belief, Defendants have, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '295 patent and knowledge that its acts are encouraging infringement.

85.     Defendants' indirect infringement of the '295 patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '295 patent before the filing

of this Complaint and have infringed the '295 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

86.    Defendants' indirect infringement of the '295 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

87.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '295 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment against Defendants as follows:

A.    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  a. using the BTL Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine BTL device or is not authorized by Plaintiff to be sold in connection with the BTL Trademarks;

  b. passing off, inducing, or enabling others to sell or pass off any device as a genuine BTL device or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the BTL Trademarks;

  c. shipping, delivering, holding for sale, distributing, returning, transferring, storing, making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patents;

d.   aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patents;

e.   effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions;

f.   committing any acts calculated to cause consumers to believe that Defendants' Counterfeit BTL Devices are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

g.   manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of the BTL Trademarks, or any reproductions, copies, or colorable imitations thereof, or infringe any of the BTL Patents; and

h.   further infringing the BTL Trademarks, the BTL Patents, and damaging Plaintiff's goodwill.

B.  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Wish, Amazon, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third-party processors and other payment processing service providers, Internet search engines such as Google, Bing, and Yahoo (collectively, the "Third Party Providers") shall:

    a.   disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the BTL Trademarks; and

    b.   disable and cease displaying any advertisements used by, or associated with, Defendants in connection with the sale of counterfeit and infringing goods using the BTL Trademarks.

C.  That Defendants account for, and pay to Plaintiff, all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the BTL Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

D.  In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the BTL Trademarks.

E.  That Defendants have infringed one or more of the claims of the BTL Patents in violation of 35 U.S.C. § 271(b)-(c).

F.  That Plaintiff be awarded damages for Defendants' infringements of the BTL Patents. 35 U.S.C. § 284.

G.  That Plaintiff be awarded their reasonable attorneys' fees and costs.

H.  Award any and all other relief that this Court deems just and proper.

Date: May 23, 2023

Respectfully submitted,

/s/ Monica Riva Talley
Monica Riva Talley (VSB No. 41840)
Nicholas J. Nowak (*pro hac pending*)
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Ave., NW, Suite 600
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
mtalley@sternekessler.com
nnowak@sternekessler.com
*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT

I declare, under penalty of perjury of the laws of the United States that:

I am employed by BTL Industries, Inc., and I have read, am familiar with, and have personal knowledge of the contents of the foregoing Verified Complaint; and that the allegations thereof are true and correct or, to the extent that matters are not within my personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that I am informed that the facts stated therein are true and correct.

Executed on May 19, 2023.         /s/ Dallin Glenn
                                  _____
                                  Dallin Glenn
                                  General Counsel
                                  BTL Industries, Inc.