UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **BTL INDUSTRIES, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,**<br><br>**Defendants.** | Civil Action No. 1:23-cv-00673-PTG-JFA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Plaintiff BTL Industries, Inc. ("Plaintiff" or "BTL"), by counsel, and pursuant to 15 U.S.C. § 1116, 35 U.S.C. § 283, and Federal Rule of Civil Procedure 65, submits this Memorandum of Law in Support of its Motion for Entry of a Preliminary Injunction (the "Motion").

**I.    INTRODUCTION AND SUMMARY OF ACTION**

Plaintiff brings the present action to stop the sale of unauthorized and unlicensed medical aesthetic devices (the "Counterfeit BTL Devices") using counterfeit versions of Plaintiff's federally registered trademarks and infringing Plaintiff's patents.

Defendants are knowingly and intentionally promoting, advertising, marketing, retailing, offering for sale, distributing, and/or selling the Counterfeit BTL Devices within this judicial district and throughout the United States. Through their unlawful actions, Defendants have deceived, and continue to deceive, consumers into believing that they are purchasing genuine BTL Devices when, in fact, they are receiving cheap knockoffs that are unauthorized and unlicensed.

Defendants run sophisticated counterfeiting operations and are doing business with Virginia residents by offering to sell Counterfeit BTL Devices through online marketplaces, such as eBay, Wish, and AliExpress. *See* Compl. ¶¶ 22-42. The Defendant Internet Stores share unique identifiers, such as design elements, similarities in the descriptions of the goods offered, similarities in the images used to promote the devices, and similarities in the types of Counterfeit BTL Devices offered for sale, establishing a logical relationship between them. *See* Compl. ¶¶ 24-26. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope of their counterfeiting operations. *See* Compl. ¶¶ 38-40. Plaintiff is forced to file these actions to combat Defendants' counterfeiting of its registered trademarks and infringement of its patents, as well as to protect unknowing consumers from purchasing Counterfeit BTL Devices over the Internet.

Defendants' unlawful activities have caused, and will continue to cause, irreparable injury to Plaintiff by: (1) depriving Plaintiff of the value and goodwill associated with its registered trademarks; (2) defrauding the public into thinking that the products offered by Defendants are genuine BTL devices when, in fact, they are counterfeit; (3) depriving Plaintiff of its right to control the manner in which products bearing its marks are presented to the public; and (4) depriving Plaintiff of its property rights in its patents. Plaintiff respectfully requests that this Court enter a preliminary injunction against Defendants to enjoin them from the manufacture, importation, distribution, offering for sale, and sale of Counterfeit BTL Devices during the pendency of this litigation. As part of the Preliminary Injunction, Plaintiff requests that the Court order that Defendants' PayPal, Alipay, eBay, and Wish accounts be frozen until the completion of these proceedings.

## II.     STATEMENT OF FACTS

Plaintiff specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. *See* Compl. ¶ 8. Plaintiff owns numerous federally registered trademarks, including: EMSCULPT, EMSCULPT NEO, EMTONE, EMFACE, EM, EM (Stylized), HIFEM, and BTL (Stylized), (collectively the "BTL Trademarks"). *See Id.* at ¶ 14. True and correct copies of the BTL Trademarks are attached as Exhibits 2-9 to the Complaint.

Plaintiff incorporates the BTL Trademarks into the product designs and product packaging of its devices. Plaintiff also extensively uses the BTL Trademarks in connection with the marketing of its devices. *See id.* at ¶ 16. These distinctive trademarks symbolize the marketability, reputation, and goodwill of Plaintiff's brands.

The BTL Trademarks have been used exclusively and continuously by Plaintiff in connection with its aesthetic devices and have never been abandoned. *See id.* at ¶ 15. The U.S. Registrations for the BTL Trademarks are valid and subsisting in full force and effect. *See id.* The registrations for the BTL Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's right to use the BTL Trademarks in the U.S. pursuant to 15 U.S.C. § 1057(b). *See id.*

Plaintiff has further protected its innovative technology through patents issued by the United States Patent and Trademark Office (the "USPTO"), including but not limited to the asserted patents, U.S. Patent No. 10,478,634 and U.S. Patent. No. 10,821,295 B1 (collectively, the "BTL patents").

The success of products covered by the BTL patents and bearing the BTL Trademarks has resulted in significant counterfeiting of BTL's devices. *See* Compl. ¶¶ 23, 24. Consequently, Plaintiff has instituted a worldwide anti-counterfeiting program designed to regularly investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *See id.* Despite Plaintiff's enforcement efforts online and on the ground,

Defendants have persisted in creating Internet stores that sell the Counterfeit BTL Devices despite the fact that Defendants are unauthorized and unlicensed to do so. *See id.* at ¶¶ 23-42.

Recently, Plaintiff became aware of Defendants' online sales of the Counterfeit BTL Devices and strongly suspected such goods were counterfeit. *Id.* at ¶ 24. Plaintiff reviewed the product listings from each Defendant Internet Store to determine their authenticity. *Id.* Through this extensive review, Plaintiff determined that the Defendants' goods were counterfeit. *Id.* Further, each Defendant offered to sell the Counterfeit BTL Devices to this district. *Id.* at ¶ 27.

On June 8, 2023, this Court granted Plaintiff's *Ex Parte* Motion for a Temporary Asset Restraint and Expedited Discovery Order (the "TRO"). *See* ECF 43. On July 3, 2023, this Court granted Plaintiff's *Ex Parte* Motion to Modify the Temporary Restraining Order. *See* ECF 56. As modified, PayPal, AliPay, eBay, and Wish were all ordered to freeze any assets held by Defendants on their platforms. These platforms subsequently complied with the orders.

Plaintiff respectfully requests that this Court now grant a preliminary injunction against Defendants, so that they are enjoined from the manufacture, importation, distribution, offering for sale, and sale of Counterfeit BTL Devices during the pendency of this litigation. As part of the preliminary injunction, Plaintiff requests that Defendants' PayPal, eBay, AliPay, and Wish accounts be frozen until the completion of these proceedings.

If the Defendants' PayPal, eBay, AliPay, and Wish accounts are not frozen, Plaintiff will be left without recourse in this case. Defendants are likely to transfer the funds from these accounts to a different account beyond this Court's jurisdiction. *See* Compl. at ¶ 42. Plaintiff respectfully requests that this court issue an order restraining the monies held by PayPal, AliPay, eBay, and Wish of Defendants identified in Schedule A to the Complaint.

### III.     STANDARD FOR A PRELIMINARY INJUNCTION

"The standard for granting either a TRO or a preliminary injunction is the same." *Velasquez v. Velasquez*, No. 1:14CV1688 JCC/TRJ, 2014 WL 7272934, at *3 (E.D. Va. Dec. 15, 2014) (quoting *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006)). In deciding whether to grant a TRO or preliminary injunction, the Fourth Circuit follows the test established by the United States Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, whereby the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter*, 555 U.S. 7, 20 (2008)), *vacated on other grounds*, 559 U.S. 1089 (2010).

Applying the *Winter* factors to this case compels grant of Plaintiff's motion and a preliminary injunction enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of Counterfeit BTL Devices, and freezing all PayPal, Alipay, eBay, and Wish accounts linked to Defendants and, therefore, likely to be used in connection with Defendants' counterfeiting.

Plaintiff is likely to succeed on the merits as it has established facts supporting its claims that: (a) Defendants have used the BTL Trademarks, without authorization, in connection with the sale, offering for sale, distribution, or advertising of counterfeit goods or services in a manner likely to cause confusion, or to cause mistake, or to deceive; (b) Defendants use the BTL Trademarks, without authorization, in a manner that has caused and is likely to continue to cause confusion, mistake, and/or deception among consumers and the public; and (c) Defendants, as specified in column 5 of Schedule A, have induced infringement, literally or under the doctrine of equivalents, of the BTL patents by making, using, offering to sell, selling, or importing the

5

Counterfeit BTL Devices in the United States and by encouraging, promoting, and instructing customers to use at least these devices in a manner that directly infringes the BTL patents.

If the Motion is not granted, Plaintiff will suffer irreparable harm. The Fourth Circuit has recognized that "irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995); *Toolchex, Inc. v. Trainor*, 634F. Supp. 2d 586, 592 (E.D. Va. 2008) (granting a preliminary injunction based on the likelihood infringement will continue); *see also Vuitton v. White*, 945 F.2d 569, 576 (3d Cir. 1991) (recognizing "'immediate and irreparable injury' will not ordinarily be a difficult showing in a counterfeit case" and reversing the district court's denial of a seizure order).

The Trademark Modernization Act recently was amended to recognize a rebuttable presumption of irreparable harm applies upon finding of infringement in the permanent injunction context, or upon a finding of likelihood of success on the merits in the context of preliminary injunctive relief. Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)). The presumption applies to injunctive relief with respect to unfair competition, false advertising, dilution, or cyberpiracy claims brought under Section 43 of the Lanham Act in addition to trademark infringement claims. Irreparable harm resulting from patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). At this stage, Plaintiff only needs to show that irreparable harm is likely. *See, e.g.*, *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016).

Moreover, without a preliminary injunction, Defendants' unlawful conduct will continue, furthering the irreparable harm to Plaintiff. It is a virtual certainty that if the Defendants' assets are not restrained, Defendants will transfer all funds from their PayPal, Alipay, eBay, and Wish

accounts, thereby disrupting the status quo and denying Plaintiff of a means to collect upon any judgment it is likely to obtain. Moreover, none of the Defendants will suffer any cognizable harm if the Court grants Plaintiff's motion. As this Court has recognized, the ability of an infringer to reap the profits of prior infringement should not be considered when balancing the hardships. *See Toolchex, Inc.*, 634 F. Supp. 2d at 593. The public interest also weighs heavily in favor of the Court granting a preliminary injunction. Through their actions, Defendants have deceived and continue to deceive consumers into believing that they are purchasing genuine BTL devices when, in fact, they are receiving unauthorized and unlicensed knockoffs, which is creating confusion among consumers. The public will benefit from deterring such activity and preserving the availability of judicial remedies.

    A.    **<u>Plaintiff Will Likely Succeed on the Merits</u>.**

Plaintiff is likely to succeed on the merits of its claims for trademark counterfeiting and infringement, false designation of origin, infringement of U.S. Patent No. 10,478,634, and infringement of U.S. Patent No. 10,821,295.

    1.    **Trademark Counterfeiting**

A party is liable for trademark counterfeiting where: (1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offer for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse consumers. 15 U.S.C. § 1114(1); *Match.Com, LLC v. Fiesta Catering Int'l, Inc.*, No. 1:12-cv-363, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013). The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." 15 U.S.C. § 1127; *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007). A counterfeit mark does not have to be an exact replica, for that "would allow counterfeiters to escape liability by modifying the

registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (internal quotations and citation omitted).

Defendants have intentionally used the BTL Trademarks in commerce without authorization or license. Defendants have created the Defendant Internet Stores, which display the BTL Trademarks, and promote and sell Counterfeit BTL Devices. Compl. ¶ 24; Compl. Exhibits 12-14. Defendants have offered to ship counterfeit products to customers, including customers in this district. *Id.* at ¶ 27; Compl. Exhibits 15-17. Plaintiff examined the product listings and confirmed the counterfeit nature of such products. *Id.* at ¶ 28. The foregoing acts establish Defendants' unauthorized use of the BTL Trademarks in commerce.

Defendants know they are selling counterfeit products because they are marketing goods bearing counterfeit versions of the BTL Trademarks at very low prices when they should know that genuine BTL products sell for a premium price. *Id.* at ¶ 24; s*ee also United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) (observing that where goods were priced below wholesale, the defendant should have known they were counterfeit); *Coach, Inc. v. Gata Corp.*, No. 10-CV-141-LM, 2011 WL 2358671, at *8 (D.N.H. June 9, 2011) ("[A] reasonable person could have easily identified the counterfeit goods offered for sale at the Flea Market based on their dramatically low prices"). These facts support the conclusion that Defendants know the products are counterfeit.

Finally, Defendants' sale of the counterfeit products bearing and/or otherwise using the BTL Trademarks is likely to confuse consumers. There is no doubt the goods sold by Defendants are counterfeit. And, where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See* 15 U.S.C. § 1117(b)-(c); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Moreover, Defendants' product listings and descriptions bear the BTL Trademarks. *See* Compl. Exhibits 12-14. Notably, Defendants intentionally seek to confuse and

mislead consumers into thinking the Counterfeit BTL Products are genuine by showing the BTL Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for BTL devices. *See* Compl. ¶ 37.

For the foregoing reasons, Plaintiff is likely to prevail on its claims for trademark counterfeiting.

### 2. Trademark Infringement

Similarly, Plaintiff is likely to prevail on its claim for trademark infringement. A party is liable for trademark infringement where: (1) the plaintiff has a valid and protectable trademark; and (2) the defendant's use of an imitation of that trademark is likely to confuse consumers. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). To show that a mark is valid and protectable, "a party must provide evidence that: (1) the mark has been used in such a manner that its nature and function are readily apparent and recognizable without extended analysis or research; (2) the party registered and owns the mark; and (3) the party is exclusively entitled to use the mark in commerce." *Toolchex*, 634 F. Supp. 2d at 593-94 (internal quotations omitted); 15 U.S.C. § 1114(1). The BTL Trademarks are well known throughout the United States and the world, and many of the BTL Trademarks are registered around the world, including on the Principal Trademark Register of the U.S. Patent and Trademark Office. *See* Compl. ¶¶ 14-15; Compl. Exhibits 2-9. Thus, all that remains is to determine whether Defendants' use of an imitation of the BTL Trademarks is likely to confuse consumers, which it is.

Where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See* 15 U.S.C. § 1117(b)-(c); *Polo Fashions,* 816 F.2d at 148. And, as discussed above, Defendants used, and continue to use, the Defendant Internet Stores to promote and sell the Counterfeit BTL Devices. *See* Compl. Exhibits 12-14. These actions are sufficient to create a

presumption of consumer confusion and a likelihood that BTL will succeed on its claim for trademark infringement.

### 3. False Designation of Origin

Plaintiff is also likely to prevail on its claim for false designation of origin. As with trademark infringement and counterfeiting claims, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 780 (1992). Whether the violation is called infringement, unfair competition, or false designation of origin, the test is identical—is there a "likelihood of confusion?" *Id.*; *see also Lone Star*, 43 F.3d at 930 ("In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers."). Therefore, because Plaintiff has established the merits of its trademark counterfeiting and infringement claims against Defendants, including that consumers are likely to be confused, a likelihood of success is also shown as to Plaintiff's claims for federal false designation of origin.

### 4. Patent Infringement

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). It further provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). In this case, Plaintiff is the lawful holder of right, title, and interest in the BTL patents. Plaintiff has submitted extensive documentation that Defendants, as specified in column 5 of Schedule A, make, use, offer for sale, sell, and/or import into the United

States for subsequent sale or use products that infringe directly and/or indirectly, the BTL patents. See Compl. Exhibits 10-14. The documentation submitted supports the conclusion that Defendants encourage, promote, or instruct customers to use the Counterfeit BTL Devices in a manner that infringes the BTL patents. Finally, Plaintiff has not licensed nor authorized Defendants to use its patents, and none of the Defendants are authorized retailers of Plaintiff's devices. Accordingly, Plaintiff is likely to establish a *prima facie* case of patent infringement.

### B.     **Without Relief, Plaintiff Will Suffer Irreparable Harm.**

Without the requested preliminary injunction, Plaintiff is likely to suffer irreparable harm because 1) Defendants will continue to infringe upon BTL's intellectual property rights by continuing to sell Counterfeit and otherwise infringing BTL Devices, and 2) Defendants are sure to remove assets obtained by such infringement beyond this Court's jurisdiction. Although the personal identities of Defendants are unknown, they have the incentive and capacity to hide their assets upon learning that they are at risk, especially if Defendants do not reside in this country. Defendants have used multiple eBay, Wish, and AliExpress user IDs to conduct their illegal counterfeiting operation, demonstrating their ability to evade the law. *See* Compl. ¶¶ 38-40. Without a preliminary injunction enjoining Defendants from further selling Counterfeit BTL Devices and freezing the assets in Defendants' accounts, they will continue to sell the Counterfeit BTL Devices and almost certainly seek to transfer any assets they possess or receive out of their PayPal, AliPay, eBay, and Wish accounts, depriving Plaintiff of the ability to obtain an accounting or to otherwise obtain relief under 15 U.S.C. § 1117.

This Court, as well as other courts, has found that an asset freeze is justified under similar circumstances due to the likelihood that a counterfeiter will dissipate funds in accounts that are subject to the jurisdiction of U.S. courts and thereby deprive the plaintiff of an adequate remedy. *See, e.g., Ontel Products Corporation v. Unincorporated Ass'ns*, Case No. 1:20-cv-01124-LO-

TCB [ECF 39] (E.D. Va. Oct. 29, 2020) (entering a preliminary injunction against PayPal and/or Alipay accounts associated with online eBay and/or AliExpress marketplaces); *Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-01574-AJT-MSN [ECF 21] (E.D. Va. Dec. 20, 2019) (same); *Juul Labs, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-01126-LO-IDD [ECF 47] (E.D. Va. Oct. 11, 2019) (same); *Volvo Car Corp. et al. v. Unincorporated Ass'ns*, Case No. 1:19-cv-00974-LO-MSN [ECF 43] (E.D. Va. Sept. 13, 2019) (same), *Juul Labs, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-00715-LO-IDD [ECF 58] (E.D. Va. July 26, 2019) (same), *Juul Labs, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-00575-LO-IDD [ECF 62] (E.D. Va. June 28, 2019) (same), *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01516-LO-IDD [ECF 45] (E.D. Va. Jan. 15, 2019) (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01382-CMH-TCB [ECF 44] (E.D. Va. Dec. 14, 2018) (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01287-LO-IDD [ECF 48] (E.D. Va. Nov. 14, 2018) (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01207-LO-IDD [ECF 39] (E.D. Va. Oct. 17, 2018) (same); *Volvo Car Corp. et al v. The Unincorporated Associations Identified in Schedule A*, 18-cv-00977-LO-MSN [ECF 49] (E.D. Va. Oct. 4, 2018) (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01063-LO-IDD [ECF 45] (E.D. Va. Sept. 12, 2018) (same); *Volkswagen AG, et al v. The Unincorporated Associations Identified in Schedule A*, 17-cv-970-LMB-IDD [ECF 59] (E.D. Va. Jan. 8, 2018) (same); *Volkswagen AG et al. v. Unincorporated Ass'n, et a*l., Case No. 17-cv-01413 [ECF 59] (E.D. Va. Jun. 8, 2018) (same); *Global Tel-Link Corp. v. Jail Call Servs., LLC*, No. 1:14-CV-1557, 2015 WL 1936502, at *2 (E.D. Va. Apr. 28, 2015); *Microsoft Corp. v. John Does 1-8*, No. 1:14-CV-811 [ECF No. 33] (E.D. Va. July 15, 2014); *Microsoft Corp. v. Does 1-18*, No. 1:13-CV-139 LMB/TCB [ECF No. 38] (E.D.

Va. Feb. 13, 2013); *Chanel, Inc. v. Sea Hero, et al*, 235 F.Supp.3d 1375 (S.D. Fla. Mar. 8, 2016); *True Religion Apparel, Inc., et al. v. Does 1-100*, No. 1:12-cv-9894 [ECF No. 32] (N.D. Ill. Jan. 15, 2013). For these same reasons, Plaintiff will suffer irreparable harm if Defendants' accounts are not frozen.

### C. The Balance of Equities Tips Overwhelmingly in Favor of Maintaining the Status Quo by Enjoining Defendants from Selling Counterfeit BTL Devices and Freezing Defendants' Assets.

On information and belief, Defendants are an interrelated group of counterfeiters who have profited through the sale of Counterfeit BTL Devices that infringe upon the BTL Trademarks and patents. *See* ECF 6 at ¶¶ 43-46. Without a preliminary injunction on the Defendant Internet Stores, the Defendants will continue to infringe upon BTL by selling the Counterfeit BTL Devices and moving assets beyond this Court's jurisdiction, thereby disrupting the status quo and denying Plaintiff of a means to collect upon any judgment it is likely to receive.

### D. The Public Interest Weighs Heavily in Favor of Granting Preliminary Injunctive Relief.

The two aims of trademark law are to "protect the public from deceit" and to protect "investment from its misappropriation by pirates and cheats." *Two Pesos*, 505 U.S. at 782 n.l5 (quoting S. Rep. No. 1333, 79th Cong., 2d Sess., 3-4 (1946)); *see also AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976) (stating the purpose of a trademark is to protect the public from confusion about "the identity of the enterprise from which goods and services are obtained"). Thus, the public interest is served when the courts "[p]revent[] [both] consumers from being confused" and "trademarks from being used deceptively…" *Toolchex, Inc.*, 634 F. Supp. 2d at 594.

Where a registered trademark is infringed, the Lanham Act provides that the trademark holder shall be entitled to recover: (1) the defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action or statutory damages, not to exceed $2,000,000 if the court

13

finds that use of the counterfeit mark was willful. The Fourth Circuit has recognized a "public interest in making the infringing misconduct unprofitable." *Synergistic Int'l*, 470 F.3d at 176. It follows that a preliminary injunction preserving the status quo and ensuring that Defendants cannot shelter their improperly obtained profits from the reach of U.S. courts is in the public interest.

Further, the Federal Circuit has recognized the public's interest favors the enforcement of patent rights in order to promote "the encouragement of investment-based risk." *See Apple Inc. v. Samsung Elec. Co., Ltd.*, 735 F.3d 1352, 1371 (Fed. Cir. 2013) (quoting *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)). Plaintiff has expended great time and effort developing its patented devices and methodologies. It follows that a preliminary injunction preserving the status quo and ensuring that Defendants cannot shelter their improperly obtained profits from the reach of U.S. courts would protect Plaintiff's investment-based risks and is in the public interest.

## IV. CONCLUSION

In view of the foregoing, Plaintiff respectfully requests that this Court enter a preliminary injunction enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of Counterfeit BTL Devices and freezing all PayPal, AliPay, eBay, and Wish accounts associated with the Defendants and restrain and enjoin from transfer any monies in such accounts during the pendency of this litigation.

Date: September 7, 2023					Respectfully submitted,

/s/ *Monica Riva Talley*
Monica Riva Talley (VSB No. 41840)
Nicholas J. Nowak (*pro hac vice*)
STERNE KESSLER GOLDSTEIN & FOX P.L.L.C.
1100 New York Ave., NW
Washington, DC 20005
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
mtalley@sternekessler.com
nnowak@sternekessler.com

*Attorneys for Plaintiff BTL Industries, Inc.*