IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexanderia Division

BTL INDUSTRIES, INC.,

    Plaintiff,

v.                                                                                          Civil Action No. 1:23-cv-00673-PTG-JFA

THE UNINCORPORATED ASSOCIATIONS
INDENTIFIED IN SCHEDULE A,

    Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Defendant stores Kennady Beauty Machine Factory Store Store (182), LX High-end Beauty Machine Overseas Flagship Store (388), Viv Beauty Store (223), BodyfulBeauty Store (240), YINAIMEI Professional Beauty Equipment Store (229), Gorgeous Body Professional Beauty Equipment Store (368), LightBeauty Store (385), Fishbeauty Store (362), SuoFeiYaBeauty Store (294), YaSiLi beauty Store (228), Karina Beauty Store (180), CLOVELY Beauty Store (135), First Frost Store (361), Very Beauty Store (433), JaneEyre Beauty Store (179), YesCome Beauty Store (301), you my love Store (303), Your Laser Factory Store (443), Super Beauty Store (425), BaiFenBai Beauty Store (315), zane zane beauty Store (233), Ting mei beauty Store (296), Big Big Beauty Store (127), Hen meili Store (171), Best Laser Factory Store (125), ShineflyBeauty Store (208), SakulaBeauty Store (409), SunFayBeauty Equipment Store (293), YeonHee Beauty Store (441), MuuaBeauty Store (191), MarvelouslyBeauty Store (188), ExquisiteBeauty Store (252), and Daisy Beauty Store (138), (collectively the 33 Defendant Stores). The 33 Defendant Stores request the Court deny Plaintiff's Motion for Preliminary Injunction.

1

# INTRODUCTION

On May 23, 2023, Plaintiff BTL Industries, Inc. ("Plaintiff") filed this action against hundreds of defendants and claimed they targeted Viriginia residents by operating online stores that offer to sell infringing products. Dkt. 1 at ¶ 20. They have not, however, shown actual sales of their product to any of the 33 Defendant Stores. Furthermore, the five owners of the 33 Defendant Stores have not had any sales of any products in Viriginia. *See* Declarations of Shuang Cao, Jide Xie, Guangya Zuo, Lisha Deng and Jiawei Xia, attached hereto. Without any sales in Virginia the 33 Defendant Stores lack "minimum contacts" with the state of Virginia and the Court has no jurisdiction over them.

Even if there were personal jurisdiction over the 33 Defendant stores, joinder of this many unrelated defendants in a suit alleging patent infringement is not permissible under 35 U.S.C.S. § 299. And even if there were personal jurisdiction and joinder was proper, Plaintiff has yet to make adequate showing of patent or trademark infringement. Plaintiff has not shown patent infringement because the BTL patents are directed to methods for using the products themselves and the stores are all online sellers in China that do not use the product in the United States. There is also no induced infringement of the patents by 33 Defendant Stores because they had no "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.,* 135 S. Ct. 1920, 1926 (2015). For trademark infringement and related claims plaintiff has failed to show any actual confusion or other evidence of likelihood of confusion and has not even provided a direct comparison of the BTL trademarks to the defendants' trademarks.

# LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As the Supreme Court has noted, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A preliminary injunction is "never awarded as of right," but rather the court "must balance the competing claims of injury and must consider the effect on each party." *Id*. at 24.

## ARGUMENT

1. **No Personal Jurisdiction**

    Plaintiff has the burden of establishing personal jurisdiction. Fed. R. Civ. P. Rule 12(b)(2). "Courts can exercise personal jurisdiction over a defendant only if '(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause.' *Thousand Oaks Barrel Co. v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708 (E.D. Va. 2017) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Put differently, the long-arm statute must reach defendant's conduct, and that reach must not exceed the statute's constitutional grasp. *Rannoch, Inc. v. Rannoch Corp.*, 52 F.Supp.2d 681, 684 (E.D. Va. 1999).

    Jurisdiction can be general or specific, but general jurisdiction exists only when a defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). The 33 Defendant Stores solely operate in China and have never owned, leased, or utilized an office

in Virginia. See Declarations of Shuang Cao, Jide Xie, Guangya Zuo, Lisha Deng and Jiawei Xia. The Stores have never been liable to the Virginia tax jurisdiction and the Stores have not advertised, held telephone listings, maintained bank accounts in Virginia, and have no agents, employees, or contractors in Virginia. *See id*. There is no evidence that the 33 Defendant Stores had close to enough contacts necessary for the general jurisdiction.

The Due Process Clause requires nonresident defendant to have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). The "minimum contacts" requirement can be satisfied by showing that specific jurisdiction exists over defendants, which requires a showing that the "defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Whether a nonresident defendant's contacts with the forum state qualify for specific jurisdiction depends on the "extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state, whether plaintiff's claims arise out of defendant's forum activities, and whether the exercise of personal jurisdiction is constitutionally reasonable." *Id*.

"If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Consulting Eng'rs*, 561 F.3d at 278. For the exercise of specific jurisdiction to be permissible, "the defendant [must have] purposefully directed his activities at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (internal quotation marks omitted).

As set out in the Declarations the 33 Defendant Stores have never made a sale in

4

Viriginia, therefore the only contact that the 33 Defendant Stores have with Virginia are online storefronts available on the AliExpress website. The Fourth Circuit has recently held that "operation of a website accessible in South Carolina is insufficient to satisfy the minimum-contacts requirement of the personal-jurisdiction inquiry." *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124, 140 (4th Cir. 2020). In that case the Fourth Circuit acknowledged that "even though Marriott's website is interactive, Marriott does not use it to target South Carolina residents in particular." *Id.* at 143. The Fourth Circuit also noted that the website had a drop-down menu that lets customers select their state of residence but "South Carolina's inclusion in a list of every other state in the country (and every other country in the world) shows that Marriott was willing to accept reservations from South Carolina residents, but it does not show that Marriott was targeting South Carolina residents through its website." *Id*. at 142-143. In this case the AliExpress website allows users to select their location for shipping, but this functionality alone is not enough to input specific jurisdiction on all the stores operating through AliExpress.

    The 33 Defendant Stores have never made a sale to a resident of Virginia. Without sales in Virigina the 33 Defendant Stores lack "minimum contacts" with the state of Virginia and the Court has no jurisdiction over the 33 Defendant Stores.

    2. **The Joinder of Defendants was Improper**

    Plaintiff has made no attempt to show that it is entitled to join the defendants in this case in a way that is consistent with 35 U.S.C.S. § 299. "To the extent joinder of alleged infringers was previously permitted in a patent case under Rule 20 of the Federal Rules of Civil Procedure, the AIA eliminated a patent holder's ability to file a single civil action against multiple industry competitors allegedly responsible for violating the same patent or family of patents." *Global Touch Solutions, LLC v. Toshiba Corp*., 109 F. Supp. 3d 882, 886 (E.D. Va. 2015).

5

This patent case cannot proceed with all the named defendants because they do not sell the same product and did not arrive in this Court through the same transaction or occurrence. Moreover, continuing to litigate this matter in one action is a burden to the Court and prejudicial to the defendants. Congress passed 35 U.S.C.S. § 299 to prevent suits against multiple defendants solely on the basis that they sold "similar" products that allegedly infringed the same patent. Congress passed a strict joinder requirement for patent cases requiring that the "same transaction or occurrence" must "relat[e] to the making, using, importing into the United States, offering for sale, or selling of the **same accused product** or process." 35 U.S.C. § 299 (emphasis added).

There is little debate that the "same" product means literally the exact same product. Congress was clear that the express purpose of § 299 was to "legislatively abrogate" broad readings of permissible joinder, "effectively conforming these courts' jurisprudence to that followed by a majority of jurisdictions," with Congress acknowledging that "allegations that unrelated defendants design, manufacture and sell similar products does not satisfy Rule 20(a)'s requirement." H.R. Rep. No.112-98, 55 n.61 (2011).

Therefore, to be joined, the defendants must sell the same accused product, which is not the case here. For example, healthcarebeauty and Hellobeautymall (two defendants that were not included in the Motion to Dismiss) sell different products. Dkt. 19-1 at 150, 172. Even if both products are used for muscle stimulation, they are not the same product. Not only do they differ in general appearance, the healthcarebeauty product has four points of attachment to a user and the Hellobeautymall product only has two points of attachment to a user. *Id.*



healthcarebeauty's product and Hellobeautymall's product (Dkt. 19-1 at150, 172)

Federal Rule of Civil Procedure 21 covers the misjoinder of parties and provides that on motion or on its own, a district court "may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. Since the 33 Defendant Stores do not sell the same product as the other stores, we ask that the Court dismiss 33 Defendant Stores based upon misjoinder.

**3. No Direct Infringement of the Patents by Defendant Stores**

Plaintiff alleges infringement of U.S. Patent No. 10,478,634 (the "634 patent") and U.S. Patent No. 10,821,295 (the "'295 Patent"). Dkts. 17-18. However, all the claims for both '295 and '634 are method claims that include applying a device to a patient. *Id*. The Federal Circuit has held that "a party that sells an apparatus capable of performing a patented method is generally not liable for direct infringement if that infringing act comes to pass." *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 521 (Fed. Cir. 2016) (citing *Moba, B.V. v. Diamond Automation*, 325 F.3d 1306, 1313 (Fed. Cir. 2003)). "In fact, none of our decisions have found direct infringement of a method claim by sales of an end user product which

7

performs the entire method, and we decline to do so here." *Koninklijke Philips N.V. v. Zoll Med. Corp.,* 656 F. App'x 504, footnote 29 (Fed. Cir. 2016). The narrow exception to this is when "more than one actor is involved in practicing the steps." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). In that situation "an actor is liable for infringement under § 271(a) if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method" and "liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs., Inc. v. Limelight Networks, Inc*. 797 F.3d 1020, 1022 (Fed. Cir. 2015).

In this case the 33 Defendant Stores are all online stores that operate in China. *See* declarations of Shuang Cao, Jide Xie, Guangya Zuo, Lisha Deng and Jiawei Xia, attached herein. Plaintiff has not alleged, nor is it plausible that any of the 33 Defendant Stores performed each of the method claims in the United States. Nor is at alleged or plausible that the 33 Defendant Stores performed some of the steps and any US customers are "agents" of the 33 Defendant Stores, or that the 33 Defendant Stores "contracts with another to perform one or more steps of a claimed method," or established the "manner or timing of" performance of the method steps. Therefore, there is no direct infringement of the '295 patent or the '634 patent by the 33 Defendant Stores in this case.

### 4. No Induced Infringement of the Patents by Defendant Stores

" 'Whoever actively induces infringement of a patent shall be liable as an infringer.' 35 U.S.C. § 271(b). To state a claim for induced infringement, a plaintiff must allege 1) knowledge of the patent, 2) specific intent that another party infringe the patent, and 3) knowledge that the

induced acts constitute infringement." *Panduit Corp. v. Corning Inc.*, No. 5:18-CV-229-FL, at 10-11 (E.D.N.C. Jan. 14, 2019). (Citing *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). "Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.,* 135 S. Ct. 1920, 1926 (2015).

The 33 Defendant Stores are online sellers of products, not manufacturers of those products. All independent claims in the '295 patent and the '634 patent are all method claims that include features that would not be knowable by looking at the device and could only be determined by examination by an engineer. Specifically, claim 1 of '295 includes "applying a magnetic fluence of 50 T cm2 to 1,500 T cm2 to the body region", claim 9 includes "generating coils each having an inductance in a range of 1 nH to 50 mH," claim 16 includes a "magnetic field with a magnetic flux density in a range of 0.1 Tesla to 7 Tesla," and claim 23 includes "charging at least one energy storage device having a capacitance in a range of 5 nF to 100 mF." For '634 claim 1 includes "applying the time-varying magnetic field having a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 T and 7 T," claim 8 includes "flux density in a range of 0.1 T to 7 T, a repetition rate in a range of 1 Hz to 300 Hz," claim 15 includes "a maximal value of a magnetic flux density derivative in a range of 300 T/s to 800 kT/s, and a repetition rate in a range of 1 Hz to 300 Hz," and claim 23 includes a "time-varying magnetic field having a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range 0.1 T to 7 T." Dkts. 17-18.

The five owners of the 33 Defendant Stores had no knowledge of the '295 and '634 patents prior to being served and still do not know if any of their products infringe those patents.

*See* declarations of Shuang Cao, Jide Xie, Guangya Zuo, Lisha Deng and Jiawei Xia. Plaintiff has provided thousands of pages of exhibits showing screen shots of alleged infringing products and made general statements that the Defendant's products infringe BTL patents but have not actually provided any evidence that the 33 Defendant Stores directly or indirectly infringed the claims of the '295 and '634 patents. For example, in support of the Preliminary Injunction (Dkt. 92) Plaintiffs allege that defendants "make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly, the BTL patents" and reference Exhibits 10-14. (Dkt. 92 at 10-11). Those Exhibits are copies of the patents and screenshots of products. Compl. Exhibits 10-14. Therefore, based on the evidence provided by Plaintiff's at this point the owners of the 33 Defendant Stores would still have no idea whether their products infringe the '295 and '634 patents.

Even if the 33 Defendant Stores were aware of the '295 patent and the '634 patent prior to being served notice, it is simply unreasonable to believe that they would have "knowledge of patent infringement" as required by the Supreme Court given the level of technical detail in the claims. *Commil USA, LLC v. Cisco Sys., Inc*., 135 S. Ct. 1920, 1926 (2015). The 33 Defendant Stores sell a wide range of products and imputing such detailed knowledge of the functionality of a specific product is unrealistic. Without any knowledge of patent infringement of their products the 33 Defendant Stores are not liable for induced infringement.

5. **No Likelihood of Success on the Merits for Trademark Infringement, Trademark Counterfeiting, and False Designation of Origin**

For trademark infringement, trademark counterfeiting, and false designation for origin Plaintiff must establish a likelihood of confusion. "A likelihood of confusion exists 'if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question.'" *George & Co*., 575 F.3d at 393 (quoting *CareFirst*

*of Md., Inc v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006)).

The Fourth Circuit has put forth the following nine factors for courts to consider in determining whether there is a likelihood of confusion:

> (1) the strength and distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Rosetta Stone*, 676 F.3d at 153.

"Not all of these factors are of equal importance, 'nor are they always relevant in any given case.'" *George & Co.*, 575 F.3d at 393 (quoting *Anhueser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992)). Plaintiff has not provided any evidence of actual confusion in the marketplace between the BTL products and Defendants products, they have not performed a consumer survey suggesting likelihood of confusion and have provided no evidence of actual harm. More importantly, they have not even directly compared their marks to the Defendant marks at all but have only made general statements that there is a likelihood of confusion. However, the most important factor, the strength of the mark, can be addressed at this time and favors a finding of no likelihood of confusion.

"The strength of a mark is the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *First Care*, 434 F.3d at 269. This first Rosetta Stone factor "is 'paramount' in determining the likelihood of confusion." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017) (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)).

"A mark's conceptual strength is determined in part by its placement into one of four

11

categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *George & Co. LLC v. Imagination Entm't Ltd.,* 575 F.3d at 394. Descriptive marks describe a function of the goods or services and are not allowed trademark protection unless they have acquired secondary meaning. *Id.*

"An abbreviation of a descriptive term which still conveys to the buyer the descriptive connotation of the original term will still be held to be descriptive." *George & Co.*, 575 F.3d at 394 (quoting Thomas McCarthy, *McCarthy On Trademarks and Unfair Competition*. § 11:32 (collecting cases); *see also id*. § 7:11 ("If a series of letters is merely a recognizable abbreviation for a descriptive or generic term, the abbreviation is also classified as descriptive or generic.")

In this case plaintiff is asserting the trademarks EMSCULPT, EMSCULPT NEO, EMTONE, EMFACE, HIFEM, BTL and EM (word mark and logo mark). *See* Compl. ¶ 14. All the marks besides BTL use the letters EM as the trademark or part of the trademark. EM, however, is simply an abbreviation of the word electromagnetic. *See Wikipedia, Electromagnetic Field,* https://en.wikipedia.org/wiki/Electromagnetic_field, (last visited October 8, 2023). As described in Plaintiff's patents, Plaintiff's product works using electromagnetic fields. *See* U.S. Patent No. 10,478,634 and U.S. Patent. No. 10,821,295. Furthermore, EMS is the abbreviation of electrical muscle stimulation. *See Wikipedia, Electrical Muscle Stimulation,* https://en.wikipedia.org/wiki/Electrical_muscle_stimulation, (last visited October 8, 2023). Since EM is an abbreviation of a generic or descriptive term, EM is a generic or descriptive trademark. Similarly, since EMS is an abbreviation of a generic or descriptive term, the EMS portion of the trademarks is generic or descriptive.

Plaintiff has not directly compared the BTL trademarks to the defendants' marks and instead attached over a thousand pages of screenshots of the alleged infringing products. For a

reliminary injunction it is the Plaintiff's duty to show how the Defendants' have infringed their trademarks, but they have not even directly compared their trademarks with the alleged infringing trademarks. Despite the difficulty of looking through over a thousand pages of screenshots to find the 33 Defendant Stores it is my belief and understanding that most of the stores used the marks EMSzero or EMSlim. These marks do not directly infringe the BTL trademarks, but the letters EM and EMS from EMSzero or EMSlim do overlap with portions of the trademarks EMSCULPT, EMSCULPT NEO, EMTONE, EMFACE, HIFEM, and EM.  EM and EMS, however, are abbreviations of generic and descriptive terms in the industry so any overlap with these terms is not likely to create confusion.

Since Plaintiff has done nothing to prove likelihood of confusion providing injunctive relief based on trademark infringement and related claims is not appropriate.

### 6. Plaintiff Fails to Make a Showing of Irreparable Harm

Plaintiff must make a "clear showing" "that [it] is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20, 22; *Mazurek*, 520 U.S. at 972.  The Supreme Court made clear that presumptions of irreparable harm are not permissible: "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Here Plaintiff makes general statements that they will suffer irreparable harm because Defendants will continue to infringe their intellectual property rights and remove their assets without a preliminary injunction. (Dkt. 92 at 11).  Plaintiff does not, however, provide any facts to back up their assertions. Plaintiff has failed to provide evidence of lost sales to the alleged

infringing stores or provide any evidence that consumers are actually buying products from these stores instead of BTL products.

### 7. The Harm to the 33 Defendant Stores is Significant

AliExpress has kept the 33 Defendant Stores assets frozen since August 10, 2023, at the request of Plaintiff's counsel, even though the TRO expired on July 6, 2023. Having their assets frozen prevents the store owners from buying or selling anything through their stores. As Plaintiff points out "this Court has recognized, the ability of an infringer to reap the profits of prior infringement should not be considered when balancing the hardships." *Toolchex, Inc. v. Trainor*, 634F. Supp. 2d 586, 592 (E.D. Va. 2008).  However, in this case the 33 Defendant Stores are selling a large variety of products, they are not just selling muscle stimulation devices. Furthermore, AliExpress sells throughout the world, and any sales outside the United States and cannot infringe US patents and trademarks.

### 8. An Injunction does not Serve the Public Interest

The asset freeze prevents the stores from selling any products at their stores. Online product sales have provided consumers with choices they have had in the past and helped keep prices low. The more online sellers there are the more competition there is. The public interest is not served by effectively shutting these stores down based on the alleged infringement by a single product that they sell. *See, e.g., Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc*., 815 F.2d 500, 505 (8th Cir. 1987) (vacating preliminary injunction where the only public interest considered by the district court was "the consumer's right not to be confused as to the origin or source of the goods" and not "the broader economic implications of its grant of the preliminary injunction").

## CONCLUSION

WHEREFORE Defendant Stores Kennady Beauty Machine Factory Store Store (182), LX High-end Beauty Machine Overseas Flagship Store (388), Viv Beauty Store (223), BodyfulBeauty Store (240), YINAIMEI Professional Beauty Equipment Store (229), Gorgeous Body Professional Beauty Equipment Store (368), LightBeauty Store (385), Fishbeauty Store (362), SuoFeiYaBeauty Store (294), YaSiLi beauty Store (228), Karina Beauty Store (180), CLOVELY Beauty Store (135), First Frost Store (361), Very Beauty Store (433), JaneEyre Beauty Store (179), YesCome Beauty Store (301), you my love Store (303), Your Laser Factory Store (443), Super Beauty Store (425), BaiFenBai Beauty Store (315), zane zane beauty Store (233), Ting mei beauty Store (296), Big Big Beauty Store (127), Hen meili Store (171), Best Laser Factory Store (125), ShineflyBeauty Store (208), SakulaBeauty Store (409), SunFayBeauty Equipment Store (293), YeonHee Beauty Store (441), MuuaBeauty Store (191), MarvelouslyBeauty Store (188), ExquisiteBeauty Store (252), and Daisy Beauty Store (138) request that the Court deny Plaintiff's Request for a Preliminary Injunction.

DATED: October 12, 2023

Respectfully submitted,

Defendants Kennady Beauty Machine Factory Store (182), LX High-end Beauty Machine Overseas Flagship Store (388), Viv Beauty Store (223), BodyfulBeauty Store (240), YINAIMEI Professional Beauty Equipment Store (229), Gorgeous Body Professional Beauty Equipment Store (368), LightBeauty Store (385), Fishbeauty Store (362), SuoFeiYaBeauty Store (294), YaSiLi beauty Store (228), Karina Beauty Store (180), CLOVELY Beauty Store (135), First Frost Store (361), Very Beauty Store (433), JaneEyre Beauty Store (179), YesCome Beauty Store (301), you my love Store (303), Your Laser Factory Store (443), Super Beauty Store (425), BaiFenBai

15

Beauty Store (315), zane zane beauty Store (233), Ting mei beauty Store (296), Big Big Beauty Store (127), Hen meili Store (171), Best Laser Factory Store (125), ShineflyBeauty Store (208), SakulaBeauty Store (409), SunFayBeauty Equipment Store (293), YeonHee Beauty Store (441), MuuaBeauty Store (191), MarvelouslyBeauty Store (188), ExquisiteBeauty Store (252), and Daisy Beauty Store (138)

By Counsel,

_____/s/_____
Brian K. Telfair, Esq. (VSB Bar No. 40516)
brian@thetelfairlawfirm.com
THE TELFAIR LAW FIRM, LLC
3280 Brook Rd, Ste. 304
Richmond, VA 23227
804-339-0556 (Telephone)
804-597-2364 (Facsimile)

Benjamin B. Sholter, Esq.
(*Admitted Pro Hac Vice*)
bsolter@intelinklaw.com
INTELINK LAW GROUP, PC
421 Huron St., Unit 801
Chicago, IL 60654
(866) 786-4035 (Phone)
(415) 688-2760 (Facsimile)

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on 12th day of October, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and will send notification of such filing to the following in the manner indicated:

Nicholas J. Nowak, Esq.
nnowak@sternkessler.com
STERN, KESSLER, GOLDSTEIN & FOX PLLC

1100 New York Avenue NW
Washington, D.C. 20005
(202) 371-2600 (Phone)
(202) 371-2540 (Facsimile)
Counsel for Plaintiff

Monica R. Talley, Esq.
STERN, KESSLER, GOLDSTEIN & FOX PLLC
1101 K St., NW
10th Floor
Washington, D.C. 20005
(202) 371-2600 (Phone)
(202) 371-2540 (Facsimile)
Counsel for Plaintiff

_____/s/_____
Brian K. Telfair, Esq. (VSB Bar No. 40516)
brian@thetelfairlawfirm.com
THE TELFAIR LAW FIRM, LLC
3280 Brook Rd, Ste. 304
Richmond, VA 23227
804-339-0556 (Telephone)
804-597-2364 (Facsimile)