**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **BTL INDUSTRIES, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  1:23-cv-00673-PTG-JFA** |
| **THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,** | |
| **Defendants.** | |

<u>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S**</u>
<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

**TABLE OF CONTENTS**

I.     Introduction.................................................................................................. 1

II.    Defendants are subject to Personal Jurisdiction under FRCP 4(k)(2) .............................. 2

       A.     It is undisputed that BTL's claims against Defendants arise under
              federal law.......................................................................................... 2

       B.     It is undisputed that the Defendants are not subject to personal
              jurisdiction in any state. ...................................................................... 2

       C.     The exercise of personal jurisdiction is proper because Defendants
              have extensive contacts with the United States. ...................................... 3

       D.     Defendants waived their personal jurisdiction arguments. .................................. 7

III.   Defendants' joinder argument is not a proper reason to deny BTL's preliminary
       injunction. ................................................................................................. 9

IV.    BTL meets the standard for a preliminary injunction. ......................................... 9

       A.     BTL has shown a likelihood of success on the merits with respect to
              induced infringement. ......................................................................... 10

              1.     BTL has shown a likelihood of success in demonstrating direct
                     infringement. ........................................................................ 10

              2.     The Defendants knew, or should have known, that the Accused
                     Devices were infringing BTL's patents .................................... 12

       B.     Plaintiff is likely to succeed on the merits for trademark infringement,
              trademark counterfeiting, and false designation of origin. ...................... 13

              1.     BTL's trademarks are inherently distinctive, entitling them to a
                     greater scope of protection.................................................... 14

              2.     The Marks used by Defendants are identical and confusingly
                     similar to BTL's trademarks. ................................................ 15

              3.     BTL and Defendants both use the marks to promote competing and
                     visually identical aesthetic devices. ........................................ 16

              4.     Defendants acted in bad faith when selecting BTL's marks to
                     promote their devices............................................................ 16

       C.     There is no adequate remedy at law and BTL will suffer irreparable
              harm in the absence of preliminary relief. .............................................. 17

D.    The balance of equities tip in BTL's favor as any harm to Defendants is minimal........................................................................................ 18

E.    A preliminary injunction serves the public interest. ............................................ 19

V.    Conclusion ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*,
   293 F.3d 707 (4th Cir. 2002) ...........................................................4, 6, 7

*AMP Inc. v. Foy*,
   540 F.2d 1181 (4th Cir. 1976) ...............................................................19

*Apple Inc. v. Samsung Elec. Co., Ltd.*,
   735 F.3d 1352 (Fed. Cir. 2013)..............................................................19

*Automobili Lamborghini S.P.A. v. Lamborghini Latino America US*,
   400 F.Supp. 3d 471 (E.D. Va. 2019) ........................................................3

*Bowe Bell & Howell Co, v. Harris*,
   145 F. App'x. 401 (4th Cir. 2005) ...........................................................19

*Courthouse News Serv. v. Schaeffer*,
   429 F. Supp. 3d 196 (E.D. Va. 2019) ........................................................9

*George & Co. LLC v. Imagination Ent. Ltd.*,
   575 F.3d 383 (4th Cir. 2009) ............................................................14, 15

*Graduate Mgmt. Admission Couns. v. Raju*,
   241 F. Supp. 2d 589 (E.D. Va. 2003) ...............................................2, 3, 6, 7

*ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.*,
   256 F.3d 548 (7th Cir. 2001) ...................................................................3

*J.R. v. Walgreens Boots All., Inc.*,
   470 F. Supp. 3d 534 (D.S.C. 2020).........................................................7, 8

*Lim v. Tisack*,
   2017 WL 1194516 (W.D. Va. March 30, 2017), and (2) ...................................7, 8

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*,
   43 F.3d. 922 (4th Cir. 1995) .............................................................14, 15

*Makdessi v. Clarke*,
   2023 WL 361099 (E.D. Va. Jan. 23, 2023) ..................................................9

*Minnesota Mining & Mfg. Co. v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002)...............................................................10

*Pizzeria Uno Corp. v. Temple,*
    747 F.2d 1522 (4th Cir. 1984) ..................................................14, 15, 16

*Real Truth About Obama, Inc. v. Fed. Election Comm',*
    575 F.3d 342 (4th Cir. 2009) .........................................................9

*Rosetta Stone Ltd. v. Google, Inc.,*
    676 F.3d 144 (4th Cir. 2012) .........................................................14

*Sanofi-Synthelaboo v. Apotex, Inc.,*
    470 F.3d 1368 (Fed. Cir. 2006)......................................................19

*Sara Lee Corp. v. Kayser-Roth Corp.,*
    81 F.3d 455 (4th Cir. 1996) ......................................................15, 16

*Saudi v. Northrop Grumman Corp.,*
    427 F.3d 271 (4th Cir. 2005) ..........................................................3

*Steves & Sons, Inc. v. JELD-WEN, Inc.,*
    2020 WL 2312030 (E.D. Va. May 8, 2020) .................................11, 12

*Synergistic Int'l, LLC v. Korman,*
    470 F.3d 162 (4th Cir. 2006) ....................................................14, 19

*Toolchex, Inc. v. Trainor,*
    634 F. Supp. 2d 586 (E.D.V.A. 2008) ............................................19

*VolksWagen AG v. hkseller*2011,*
    2019 WL 1039660 (N.D.I.L. Feb. 2, 2019) .....................................18

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008), vacated on other grounds, 559 U.S. 1089 (2010)
    ...........................................................................................9, 18

**Statutes**

15 U.S.C. § 1116(a) ....................................................................17, 18

35 U.S.C. §§ 101, *et seq.*.................................................................2

35 U.S.C. § 271..............................................................................2

35 U.S.C. § 287.............................................................................12

Lanham Act, 15 U.S.C. §§ 1114, 1125(a) ..........................................2

**Other Authorities**

Fed. R. Civ. P. 4(k)(2)............................................................. *passim*

Fed. R. Civ. P. 4(k)(l)(A)............................................................................................................3

Fed. R. Civ. P. 12(h)(1)...............................................................................................................8

## I.    **Introduction**

Defendants' Opposition, based in significant part on legal error, inapplicable standards, and questionable facts, does nothing to undermine the conclusions that Plaintiff BTL Industries, Inc. ("BTL") asks this Court to reach in granting BTL's motion for a preliminary injunction. First, BTL is likely to succeed in showing that Defendants have infringed and will continue to infringe BTL's intellectual property rights. Second, Defendants have caused and will continue to cause irreparable damage to BTL's reputation, and, in the absence of a preliminary injunction, will remove assets outside of the jurisdiction of this Court, thereby depriving BTL of an opportunity to litigate this case on the merits and preventing BTL from recovering any money in satisfaction of a potential damages award. Third, the only harm Defendants will face if this Court issues a preliminary injunction is that they will not be able to continue to profit through their counterfeiting and infringement of BTL's intellectual property. And finally, a preliminary injunction will prevent further infringement of BTL's intellectual property rights and prevent the sale of unregulated and non-FDA-cleared aesthetic devices to citizens in the United States.

The Court should disregard Defendants' arguments to the contrary. As an initial matter, Defendants' own declarations and AliExpress seller pages support a conclusion that personal jurisdiction is proper in this case under Fed. R. Civ. P. 4(k)(2). And if Defendants have been misjoined, the proper remedy is severance, not a denial of BTL's Motion. Finally, with respect to the merits, Defendants' only evidence consists of a collection of self-serving and uncorroborated declarations that contain statements directly contradicted by the contents of Defendants' own AliExpress seller pages.

For these reasons, and the reasons discussed further herein, BTL respectfully requests the Court grant its Motion for Preliminary Injunction.

- 1 -

II.     **Defendants are subject to Personal Jurisdiction under FRCP 4(k)(2)**

Personal jurisdiction over the Defendants is proper under FRCP 4(k)(2), which provides for personal jurisdiction when (1) the claims arise under federal law, (2) the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and (3) the exercise of jurisdiction is consistent with the Constitution and the laws of the United States. *See Graduate Mgmt. Admission Couns. v. Raju*, 241 F. Supp. 2d 589, 596-97 (E.D. Va. 2003). The purpose of Rule 4(k)(2) is to address instances where the defendant "lacks contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy the due process requirements." *Id.* at 597. Such is the case here. Because there is no other forum in which Defendants have stated personal jurisdiction is proper, the Court properly has personal jurisdiction under Rule 4(k)(2).

A.      **It is undisputed that BTL's claims against Defendants arise under federal law.**

The first requirement of Rule 4(k)(2) is met as it is undisputed that the claims against Defendants arise under federal law. D.I. 1, ¶ 1. Specifically, BTL's Complaint against Defendants alleges trademark infringement, trademark counterfeiting, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq.*, including 35 U.S.C. § 271.

Because the claims against Defendants arise under federal law, the first requirement of personal jurisdiction under Rule 4(k)(2) is satisfied.

B.      **It is undisputed that the Defendants are not subject to personal jurisdiction in any state.**

The second requirement of Rule 4(k)(2) is met because it is undisputed that Defendants are not subject to jurisdiction in any particular state. Rule 4(k)(2) provides federal jurisdiction in cases where the defendant "is not subject to jurisdiction in any state's courts of general

- 2 -

jurisdiction." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005). The rule is specifically predicated upon circumstances in which there is a strong federal interest in the matter and where the defendant may not be subject to suit in any state, even though the defendant may have sufficient contacts with the United States as a whole. *See Raju*, 241 F. Supp. 2d at 597.

Defendants have not alleged that there is jurisdiction in any other forum. Rather, they merely state that there is not jurisdiction in Virginia. Given Defendants lack of identification of any state in which they may be sued, personal jurisdiction is proper under Rule 4(k)(2). *See Automobili Lamborghini S.P.A. v. Lamborghini Latino America US*, 400 F.Supp. 3d 471, 478 (E.D. Va. 2019) ("Here, Garcia contends that he is not subject to personal jurisdiction in Virginia, and Garcia does not identify any other state where he could be sued. Therefore, it is appropriate to conclude, by a preponderance of the evidence, that Garcia is not subject to personal jurisdiction in any state, which satisfies the final Rule 4(k)(2) element."). Therefore, the second element of the Rule 4(k)(2) analysis is met.

**C.     The exercise of personal jurisdiction is proper because Defendants have extensive contacts with the United States.**

Exercising personal jurisdiction over the Defendants is proper because Defendants have extensive contacts with the United States. Defendants attempt to argue that they have not made a sale in Virginia and, therefore, personal jurisdiction is improper in Virginia. Opp. at. 4-5. But this is not the test. Under Rule 4(k)(2), personal jurisdiction is proper if there are sufficient contacts with the United States. *See Automobili Lamborghini*, 400 F. Supp. 3d at 474 ("The first element of the Rule 4(k)(2) analysis requires the same minimum contacts due process analysis as is conducted under Rule 4(k)(l)(A), with the significant difference that the relevant forum is the United States as a whole, not an individual State."); *see also ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.,* 256 F.3d 548, 551 (7th Cir. 2001) ("So far as the Constitution is concerned, the

right question is whether [the defendant] has contacts with the United States."). In addition, the Fourth Circuit has held that a defendant's internet activity can serve as a basis for exercising specific personal jurisdiction if the defendant "(1) directs electronic activity into the [forum], (2) with the manifested intent of engaging in business or other interactions within the [forum], and (3) that activity creates, in a person within the [forum], a potential cause of action cognizable in the [forum]'s courts." *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

BTL has sufficiently demonstrated that Defendants satisfy the due process inquiry under Rule 4(k)(2). First, given the declarations provided by Defendants, it is undisputed that the following entities sold into the United States either an infringing device or, at the very least, components of an infringing device, each of which give rise to this litigation: Kennady Beauty Machine Factory Store, BodyfulBeauty Store, CLOVELY Beauty Store, Daisy Beauty Store, ExquisiteBeauty Store, First Frost Store, FishBeauty Store, Gorgeous Body Professional Beauty Equipment Store, Karina Beauty Store, MarvelouslyBeauty Store, MuuaBeauty Store, SakulaBeauty Store, SuoFeiYaBeauty Store, Viv Beauty Store, YaSiLi Beauty Store, YeonHee Beauty Store, YINAIMEI Professional Beauty Equipment Store, and LX High-end Beauty Machine Overseas Flagship Store. *See* D.I. 112-2 (Decl. of Xia), D.I. 112-3 (Decl. of Xie), D.I. 112-04 (Decl. of Deng), D.I. 112-05 (Decl. of Cao).

Second, purchaser reviews for Karina Beauty Store and YINAIMEI Professional Beauty Equipment Store indicate that each of these entities sold actual devices in the United States – contradicting the sworn declarations denying such sales. *See* D.I. 21-5 at 194, 202 (Karina); D.I. 21-8 at 200, 212 (Yinaimei); *contra* D.I. 112-01; D.I. 112-03. Examples are provided below:

A***h

US

Color: 4 handle   Ships From: China   Standard Voltage: 220V   Plug Type: EU Plug   Logistics: China Post Air Parcel

Loved! Great Machine, arrived fast, excellent seller service! Thank you  14 Dec 2022 13:50

D.I. 21-5 at 202.

M***

US

Color: 4 handle neo   Standard Voltage: 220V   Plug Type: US Plug   Logistics: DHL

I think it's a helpful workout machine with no side effects. It took a while to make an evaluation, and it really worked very v

 

J***

US

Color: 4 handle neo   Standard Voltage: 110V   Plug Type: US Plug   Logistics: DHL

18 Mar 2023 18:08

R***

US

Color: 4 handle neo   Standard Voltage: 110V   Plug Type: US Plug   Logistics: DHL

28 Apr 2023 00:24

D.I. 21-8 at 212.

By selling the products that give rise to this dispute into the United States, it is clear that these entities have sufficient contacts to allow personal jurisdiction under Rule 4(k)(2).

Third, the only declaration that states that the remaining stores did not sell any products in the United States is that of Zuo Guangya. *See* D.I. 112-01. However, a review of the exhibits BTL provided to its complaint demonstrate that Zuo Guangya's declaration is false. For example, the purchaser reviews indicate that Best Laser Factory Store has sold at least one device within the United States.



D.I. 21-1 at 70, 79. Thus, it is clear that Zuo Guangya's stores have contact within the United States sufficient to allow for personal jurisdiction under Rule 4(k)(2) in this action.

Finally, even if the court were to assume that none of the entities have sold any devices within the United States, there is still sufficient evidence to allow for personal jurisdiction under Rule 4(k)(2) under the test enumerated in *ALS*. *See* 293 F.3d at 714. *First*, the online stores of the Defendants demonstrate that they were targeting the United States market. Each of the stores provides ordering and shipping information for customers within the U.S. *See Raju*, 241 F. Supp. 2d at 598 ("First, and most significantly, the GMATplus site provides specific ordering information for United States customers."). The websites provide the total price in U.S. dollars, the estimated arrival time, and estimated shipping costs. *See, e.g.* D.I. 21-5 at 194 (Karina); D.I. 21-13 at 177 (BaiFenBai). Further, for a significant number of entities, the webpage allows customers to determine which type of electrical cord the machine should have, including a "US Plug." *See, e.g.*, D.I. 21-5 at 194 (Karina); D.I. 21-13 at 177 (BaiFenBai).

*Second*, these same facts demonstrate that the Defendants had an intent to conduct business within the United States. Indeed, the evidence and declarations indicate that each of the store owners operated one or more stores that conducted business within the United States, further evidencing Defendants' intent. *See supra* at pp. 4-5. *Finally*, the Defendants' online activity, through the sale of the infringing devices and the use of BTL's trademarks, creates "a

potential cause of action cognizable in the courts," including the patent infringement and trademark actions that are alleged here. *See ALS*, 293 F.3d at 714. Therefore, the final requirement of Rule 4(k)(2) is met.

Defendants attempt to escape this litigation by arguing that there is no personal jurisdiction because they have not actively sold a product in Virginia. However, as BTL alleged, the contacts Defendants have with the United States, including the operation of their online stores, injured both BTL and consumers in the United States. *See* D.I. 1, ¶¶ 55, 57, 60, 72. Indeed, the very purpose of Rule 4(k)(2) is to prevent non-U.S. entities from escaping the jurisdiction of U.S. Courts on the sole basis that they are a resident of foreign countries. *See Raju*, 241 F. Supp. 2d at 597. This is precisely what Defendants attempt to do here. Therefore, BTL asks the Court to find personal jurisdiction under Rule 4(k)(2).[1]

### D.   Defendants waived their personal jurisdiction arguments.

Even if the Court were to find that personal jurisdiction is not proper under Rule 4(k)(2), the Defendants waived their personal jurisdiction arguments for two reasons: (1) by taking steps that gave BTL a reasonable belief that Defendants were planning to defend the suit on the merits, *see Lim v. Tisack*, 2017 WL 1194516, at *3 (W.D. Va. March 30, 2017), and (2) procedurally by failing to properly raise its personal jurisdiction defense, s*ee J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 547 (D.S.C. 2020) ("Rule 12(h)(1) requires a party to raise its jurisdictional defense in its answer or its motion to dismiss.").

To the first point, counsel for Defendants reached out to BTL and informed it that Defendants planned to oppose BTL's Motion for Preliminary Injunction. Because Defendants

---

[1] Personal jurisdiction pursuant to Rule 4(k)(2) is proper even when it is not specifically pled by the plaintiff in the complaint. *See Raju*, 241 F. Supp. 2d at 596. However, there is more than enough evidence demonstrating that personal jurisdiction is proper under Rule 4(k)(2).

had not filed their motion papers on the day before the hearing, the parties entered into a Joint Stipulation for Continuance of the Preliminary Injunction Hearing. *See* D.I. 104-1.  However, the Order was not granted prior to the hearing, and counsel for both BTL and Defendants appeared in court in case the hearing proceeded, demonstrating that Defendants intended to make arguments on the merits, if necessary.

Further, Defendants have not filed a Rule 12 motion to dismiss for lack of personal jurisdiction. Rather, they filed an opposition to Defendants' preliminary injunction that, while addressing their personal jurisdiction arguments, was combined with arguments on the merits of the case. Even more compelling, Defendants recently filed a Motion for an extension of time to Answer the Complaint. *See* D.I. 114. Defendants further provided the Court with the Defendants' Answers. *See* D.I. 117, 118, 119, 120, 121. Not once do Defendants raise the issue of personal jurisdiction in their proposed Answers, nor has Defendant filed a Motion to Dismiss. Because Defendants have given BTL a reasonable expectation that they intend to defend this case on the merits, Defendants have waived personal jurisdiction. *See Lim,* 2017 WL 1194516, at *3.

Second, Defendants' failed to file a motion to dismiss for lack of personal jurisdiction before filing an answer. *See Walgreens*, 470 F. Supp. 3d at 547; *see also* Fed. R. Civ. P. 12(h)(1). Nor do Defendants' Answers provide any defense for lack of personal jurisdiction. Under the Rule, Defendants must move to dismiss the case or raise the defense in their Answer to properly assert lack of personal jurisdiction. *See* R. 12(h)(1). Failure to do so results in waiver. Here, Defendants did not properly move to dismiss this case for lack of personal jurisdiction prior to submitting their Answer to BTL's Complaint. Under the Federal Rules, Defendants' personal jurisdiction objection is waived. *See Walgreens*, 470 F. Supp. 3d at 547; *see also* Fed. R. Civ. P. 12(h)(1).

III. **Defendants' joinder argument is not a proper reason to deny BTL's preliminary injunction.**

Defendants' arguments regarding BTL's allegedly improper joinder is not a basis to deny BTL's preliminary injunction. Defendants argue that they are misjoined in the litigation and ask the Court to dismiss them. Opp. at 6. But, as this Court has held, "misjoinder is not a ground for a court to dismiss an action." *Courthouse News Serv. v. Schaeffer*, 429 F. Supp. 3d 196, 201 (E.D. Va. 2019). At best, Defendants have argued that their cases should be severed. *See Makdessi v. Clarke*, 2023 WL 361099, at *3 (E.D. Va. Jan. 23, 2023) ("Where there is misjoinder of parties . . . a court has the discretion to 'sever any claim against a party' and proceed with it separately.").

If Defendants seek severance, Defendants must file a motion so that the issue may be adequately briefed to the court. Severing Defendants' case and proceeding separately should not interfere with BTL's request for a preliminary injunction. Rather, the parties would just continue to litigate the case separately. BTL requests that the Court deny Defendants' request for dismissal.

IV. **BTL meets the standard for a preliminary injunction.**

In the Fourth Circuit, a plaintiff seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Real Truth About Obama, Inc. v. Fed. Election Comm'*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)), vacated on other grounds, 559 U.S. 1089 (2010). As detailed more fully below, BTL has sufficiently demonstrated each of the enumerated elements, and nothing in Defendants' brief undermines the allegations BTL made in its Complaint.

- 9 -

### A.      BTL has shown a likelihood of success on the merits with respect to induced infringement.

BTL has demonstrated that the Defendants' direct their customers to infringe the '634 patent with the use of the Accused Devices and, therefore, are liable for induced infringement.[2] In order to demonstrate induced infringement, a plaintiff needs to show that there is (1) direct infringement, and (2) the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002). As described more fully below, BTL demonstrated a likelihood of success in meeting these requirements.

### 1.      BTL has shown a likelihood of success in demonstrating direct infringement.

BTL has shown that, at least, Best Laser Factory Store, Daisy Beauty Store, ExquisiteBeauty Store, Karina Beauty Store, MarvelouslyBeauty Store, MuuaBeauty Store, SakulaBeauty Store, YeonHee Beauty Store, and YINAIMEI Professional Beauty Equipment Store all have sold accused devices into the United States. *See* D.I. 112-02 (Decl. of Xia), D.I. 112-04 (Decl. of Deng); D.I. 21-5 at 202 (Karina); D.I. 21-8 at 212 (Yinaimei). The evidence shows that at least one company for the majority of the purported "owners" of the Defendants has sold an infringing device into the United States. *See* D.I. 112-01 (Best Laser Factory Store); D.I. 112-01 (All stores); D.I. 112-03 (Karina Beauty Store and YINAIMEI Professional Beauty Equipment Store); D.I. 112-04 (SakulaBeauty Store). The evidence contradicts the self-serving declarations claiming that there were no sales in the United States of the infringing products. *See, e.g.* D.I. 112-01; D.I. 112-04. Moreover, the declarations provide no documentary evidence, do

---

[2] BTL notes that, while it maintains its claim that the Defendants directly infringed the Asserted Patents, it relies on its claims of induced infringement with respect to its Preliminary Injunction.

not identify the legal entities behind the Defendant store names, do not explain the declarant's involvement with the Defendant stores, and do not identify the residence or other identifying information of the Declarant such that legal action could be taken against false statements. As such, these declarations are unreliable and should be disregarded.  *See, e.g., Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2020 WL 2312030, at *6 (E.D. Va. May 8, 2020) (noting that reliability of declarations goes to the weight to be given to the information).

Further, BTL's Complaint specifically states that the Defendants induce infringement of at least, BTL's '634 patent by instructing their customers to infringe the '634 patent.[3] Claim 1 of the '634 patent recites:

> A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:
> placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;
> coupling the first applicator to the patient with an adjustable flexible belt so that the belt  holds the first applicator to the patient's skin or clothing;
> providing energy to the magnetic field generating coil in order to generate a time-varying  magnetic field; and
> applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region, wherein the time-varying magnetic field is applied to the body region with a magnetic flux  density sufficient to cause a muscle contraction in the body region.

The Defendants' marketing demonstrates that it has directed its customers to use the Accused Devices in an infringing way. For example, Fishbeauty Store describes its machine as an "EMS Muscle Building Stimulator Machine." D.I. 21-18 at 86. Further, the webpage demonstrates using the applicators of the machine on a body region of the patent, including the abdomen or buttock. *Id.* at 92. The webpage further shows the applicator being held to a patient's

---

[3] Defendants make statements regarding the infringement of the '295 patent (Opp. at 8-10); however, BTL did not assert the '295 patent against any of the Defendants opposing the preliminary injunction.

body using a belt. *Id.* The webpage further recites that the accused device creates "[h]igh intensity pulsed electromagnetic stimulation," which correlates to providing energy to a coil to generate a time-varying magnetic field. *See id.* at 88. In addition, the webpage states the parameters of the machine, including that the output intensity is "7 Tesla." *Id.* at 86. When applied with the applicators described in the webpages, this output intensity will lead to the magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$. The webpage also states that the electromagnetic stimulation will create "continuous muscle contraction" in the body. *Id.* at 88. The remaining Defendants make similar statements regarding their devices.

The webpages are evidence that the Defendants are instructing their customers to infringe the '634 patent. Coupled with the fact that the Defendants have sold devices in the US (and some of those customers have left reviews regarding the use of the machines, *see, e.g.* D.I. 21-1 at 79), BTL has demonstrated a likelihood of success in proving that the Defendants' customers directly infringed the '634 patent and that Defendants' induced that infringement.

## 2.    The Defendants knew, or should have known, that the Accused Devices were infringing BTL's patents

The Defendants knew, or should have known, that they were inducing their customers to infringe the '634 patent. BTL has consistently marked its products with the '634 patent as required under 35 U.S.C. § 287. Given the small industry in which BTL operates, it is customary for competitors to conduct patent landscape searches to determine whether patents exist on machines similar to BTL's EMSCULPT device. *See* Declaration of Jason Wooden (hereafter "Wooden Decl.") ¶ 10. Further, the EMSCULPT device is the first-launched and most popular device for electromagnetic body sculpting on the market in the United States.[4] *Id.* ¶ 11.  Given

---

[4] While Allergan launched CoolTone to compete with EMSCULPT, BTL's well-publicized patent litigation against Allergan makes it only more likely that Defendants were aware of BTL's patents. See https://www.prnewswire.com/news-releases/btl-files-patent-

these facts, it is highly unlikely that anyone attempting to compete with the EMSCULPT device would not first look at the patent landscape. Thus, Defendants' must have known or, at the very least, should have known, of BTL's '634 patent. Any lack of knowledge the Defendants' allege can only be attributed to willful blindness.

Further, Defendants knew, or should have known, that they were instructing their customers to infringe the '634 patent. As stated previously, the Defendants' webpages make clear that they were providing the Accused Devices to customers and informing them about how to operate the Devices in a manner they knew would infringe the '634 patent. A clear reading of claim 1 of the '634 patent makes it readily apparent that the Defendants' Accused Devices infringe. Thus, it is reasonable to conclude that the Defendants' knew that their instructions led to the infringement of the '634 patent. Therefore, BTL has demonstrated a likelihood of success on the merits regarding induced infringement.

**B.    Plaintiff is likely to succeed on the merits for trademark infringement, trademark counterfeiting, and false designation of origin.**

BTL is likely to succeed on its claims for trademark infringement, counterfeiting, and false designation of origin because Defendants use identical marks and marks that are confusingly similar to BTL's federally registered trademarks to promote the sale of counterfeit devices.

To succeed on each claim, Plaintiff must demonstrate that it has (1) valid and protectable trademark rights, and (2) the Defendants use identical or confusingly similar marks that are

infringement-lawsuit-against-allergan-and-zimmer-related-to-emsculpt-300979533.html, https://www.prnewswire.com/news-releases/btl-files-complaint-with-the-us-international-trade-commission-to-seek-an-exclusion-order-to-prevent-the-unlawful-importation-of-infringing-cooltone-and-coolsculpting-products-into-the-united-states-301107304.html, https://www.prnewswire.com/news-releases/btl-reaches-patent-settlement-with-abbvie-301369443.html.

likely to confuse consumers as to the source of the goods. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). Defendants do not contest BTL's trademark rights, but instead argue that there is no likelihood of confusion between BTL's marks and those used by Defendants.

The Fourth Circuit considers the following nine factors to determine whether there is a likelihood of confusion between marks:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 153 (4th Cir. 2012). No one factor is dispositive and some may not be relevant. *Id.* at 154 (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). The most relevant factors at this time are the first, second, third, and sixth factors, all of which favor BTL.

> **1.      BTL's trademarks are inherently distinctive, entitling them to a greater scope of protection.**

In addressing the first factor, courts will categorize marks into "four classes in increasing order of strength or distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 933 (4th Cir. 1995). "[T]he stronger the mark, the greater likelihood that consumers will be confused by competing uses of the mark." *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009).

In determining which category a mark falls in, courts give strong deference to determinations made by the United States Patent and Trademark Office (USPTO). *Id.* at 936. The USPTO will only grant registrations directly to the Principal Register if the mark is suggestive or arbitrary. *See Id.* at 934. If a mark is descriptive, the USPTO will require the applicant to provide proof that the mark has acquired secondary meaning before allowing the mark to register.

BTL owns federal registrations on the Principal Register for the marks EMSCULPT, EMSCULPT NEO, EMTONE, HIFEM, BTL, EMFACE, EM, and EM (Stylized). BTL was not required to demonstrate secondary meaning for any of the marks to obtain registration on the Principal Register, meaning BTL's marks are inherently distinctive, not descriptive or generic. *See Id.* at 936.

Because BTL's marks are inherently distinctive, they are entitled to the greatest scope of protection against infringement. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).

> **2.    The Marks used by Defendants are identical and confusingly similar to BTL's trademarks.**

The second factor focuses on the similarities between the marks in sight, sound, and meaning. *George & Co*, 575 F.3d at 396. It is not necessary that the marks be identical. *See Sara Lee Corp,* 81 F.3d  at 465 (finding that "L'eggs" is similar to "Leg Looks"); and *Pizzeria Uno Corp.*, 747 F.2d at 1534 (finding "Pizzeria UNO" similar to "Taco UNO" because both marks share the predominant term "UNO").

Defendants use numerous marks to promote their devices, including marks that are identical to BTL's federally registered EMSCULPT and HIFEM trademarks and marks that are confusingly similar, such as: EMS-CULPT, EMS CULPT, EMS SULPTING, EMS

SCULPTURE,  EMSLIM, EMSLIM NEO, and EMS SLIMMING. *See* D.I. 21-1 at 70, 96; D.I. 21-2 at 41, 81; D.I. 21-5 at 27, 185, 194, 225; D.I. 21-6 at 33, 96; D.I. 21-7 at 101; D.I. 21-8 at 86, 181, 200, 271; D.I. 21-9 at 56, 219; D.I. 21-12 at 102, 111, 138, 209; D.I. 21-13 at 4, 177; D.I. 21-18 at 69, 86, 166; D.I. 21-19 at 162, 196; D.I. 21-21 at 42; D.I. 21-22 at 58, 156; and D.I. 21-23 at 33, 65. The use of the identical marks alone is sufficient to demonstrate that the second factor favors BTL.

The remaining marks used by Defendants are also confusingly similar to BTL's marks. The marks that comprise the terms "EMS" and some variation of "SCULPT" are nearly identical to BTL's EMSCULPT mark in sight, sound, and meaning. *See Sara Lee Corp*., 81 F.3d at 465. Furthermore, the EMSLIM-formative marks are also confusingly similar to BTL's marks in sight, sound, and meaning. Both marks are comprised of the terms EM plus an additional term beginning with S that are synonymous with being in good shape. *Pizzeria Uno Corp.,* 747 F.2d at 1534. Accordingly, the second factor also favors BTL.

> **3.** **BTL and Defendants both use the marks to promote competing and visually identical aesthetic devices.**

The third factor relates to the similarities of the goods and services the marks identify. Defendants do not dispute that they use BTL's trademarks and the confusingly similar marks to promote their competing and visually identical aesthetic devices. Accordingly, this factor favors BTL.

> **4.** **Defendants acted in bad faith when selecting BTL's marks to promote their devices.**

Where a defendant acts with "intent to confuse the buying public, th[ere] is strong evidence establishing  likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisement, etc., to resemble the other's so as deliberately to induce confusion." *Pizzeria Uno Corp.*, 747 F.2d at 1535.

Here, Defendants use marketing images that are either identical to Plaintiff's or nearly identical, oftentimes replacing Plaintiff's EMSCULPT mark with EMSLIM. *See* Woodsen Decl. ¶ 8. Furthermore, Defendants indicate that their devices have won numerous awards, such as the The Beauty Authority's 2019 NewBeauty Award and the RealSelf 2020 Most Worth It award. *See* D.I. 21-5, 196. However, these awards were given to BTL for its EMSCULPT Device. *See* Woodson Decl. ¶ 6.

These actions by Defendants demonstrate that they are acting with bad faith when using BTL's trademarks and confusingly similar marks. Accordingly, this factor also favors BTL.

BTL has demonstrated that it is likely to succeed on the merits for its trademark infringement, counterfeiting, and false designation of origin claims. BTL's marks are inherently distinctive, and therefore entitled to the greatest scope of protection. Defendants use both identical and confusingly similar marks in connection with the same types of goods that BTL offers under its marks. Furthermore, there is evidence indicating that Defendants have intentionally decided to use BTL's trademarks and confusingly similar marks to unlawfully draw on the goodwill BTL has established in its marks.

### C.     There is no adequate remedy at law and BTL will suffer irreparable harm in the absence of preliminary relief.

If the preliminary injunction is not granted, BTL is likely to suffer irreparable harm. Where a plaintiff has demonstrated that it is likely to succeed on the merits in a trademark counterfeiting or infringement case, it is entitled to a rebuttable presumption of irreparable harm when seeking a preliminary injunction. 15 U.S.C. § 1116(a). As discussed above, BTL is likely to succeed on the merits of its trademark infringement claims.

Rather than rebutting this presumption, Defendants ignore this statutory language and claim that rebuttable presumptions are not permissible. This is simply not the case. Defendants'

reliance on *Winter*, a case decided in 2008, is misplaced because: (1) the Supreme Court did not hold that statutory presumptions of irreparable harm are impermissible; and (2) 15 U.S.C. § 1116(a) was amended in 2020 to provide for the presumption. *See Winter, 555 U.S.* at 22, and 5 J. Thomas McCarthy, *McCarthy On Trademarks and Unfair Competition* § 30:47 (5th ed.).

Because Defendants failed to rebut the presumption of irreparable harm, BTL maintains that it will suffer irreparable harm in the absence of a preliminary injunction. Nevertheless, even if Defendants did attempt to rebut this presumption, BTL notes that its trademarks and reputation are damaged by the continued offering for sale of these counterfeit products in the United States.

Furthermore, without a preliminary injunction freezing Defendants' accounts, they will undoubtedly transfer any assets held in such accounts beyond this Court's jurisdiction and default in this action. *See* Compl. ¶¶ 38-40; *see also VolksWagen AG v. hkseller*2011*, 2019 WL 1039660, at 2, Fn. 1 (N.D.I.L. Feb. 2, 2019) (explaining online sellers' removal of assets in the absence of a freeze on the accounts after the denial of a preliminary injunction and the sellers' subsequent failure to continue to engage in the litigation). Despite participating in this litigation, Defendants have not identified themselves beyond their names and the fact that they live in China. If the preliminary injunction is not entered, BTL will be irreparably harmed because it will be deprived of what will likely be its only remedy in this case, and Defendants will be free to repeat their infringing actions to again harm BTL and U.S. consumers.

### D.   The balance of equities tip in BTL's favor as any harm to Defendants is minimal.

The Court must also consider any potential harm to Defendants in granting a preliminary injunction. If the preliminary injunction is granted, the only harm Defendants will face is that they will not be able to continue to profit through their counterfeiting and infringement of BTL's intellectual property. This type of harm should not be considered when balancing the hardships.

- 18 -

*Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D.V.A. 2008). Further, Defendants devices are not FDA-cleared so they have no legal right to continue selling them in the United States.

Defendants allege that a preliminary injunction would cause them harm because it would prevent them from selling non-infringing products on their online stores. But, nothing in the preliminary injunction would preclude Defendants from creating separate AliExpress stores to sell goods that do not infringe BTL's intellectual property. In fact, Defendants may already be selling through other stores as their declarations made no mention of how many other stores they own or control or of what impact the account freeze has had on their overall revenues.

Accordingly, the Defendants will face minimal harm if the preliminary injunction is granted while BTL would face significant harm to its goodwill and reputation if Defendants are allowed to continue to operate the stores in which they sell the counterfeit devices.

### E.    A preliminary injunction serves the public interest.

In deciding whether to grant a preliminary injunction, the Court must consider its effect on the public. The entire purpose of protecting trademarks is to "protect the public from confusion about 'the identity of the enterprise from which goods and services are purchase'." *Id.* at 594, quoting *AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976). Preventing deceptive use of a trademark is beneficial to the public. *Bowe Bell & Howell Co, v. Harris*, 145 F. App'x. 401, 404 (4th Cir. 2005). Furthermore, the Fourth Circuit has recognized a "public interest in making infringing misconduct unprofitable." *Synergisty Int'l,* 470 F.3d at 176. The Federal circuit has also recognized the public's interest favors the enforcement of patent rights in order to promote "the encouragement of investment-based risk." *See Apple Inc. v. Samsung Elec. Co., Ltd.*, 735 F.3d 1352, 1371 (Fed. Cir. 2013) (quoting *Sanofi-Synthelaboo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006).

Defendants argue that the public will not benefit from a preliminary injunction because the more online sellers, the more competition there is, which provides lower prices to consumers. However, this position ignores the benefits to the public of promoting and protecting intellectual property rights, and the public interest in removing potentially harmful counterfeit devices from the stream of commerce.

Additionally, while the FDA has cleared BTL's EMSCULPT device for use on humans, the devices sold by Defendants are not FDA-cleared and are labeled to cause consumers to confuse them with BTL's EMSCULPT device. *See* Wooden Decl. at ¶ 11. The public will benefit if these devices are removed from the marketplace.

Accordingly, the public will benefit from the entry of a preliminary injunction that prevents Defendants from profiting off BTL's intellectual property through the sale of counterfeit devices.

## V.    <u>Conclusion</u>

For the foregoing reasons, BTL requests that this Court issue a preliminary injunction enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit devices and freezing all PayPal, AliPay, eBay, and Wish accounts associated with Defendants and restrain and enjoin from transfer any monies in such accounts during the pendency of this litigation.

Dated: October 19, 2023                   Respectfully submitted,

                                          /s/ Monica Riva Talley
                                          Monica Riva Talley (VSB No. 41840)
                                          Nicholas J. Nowak (*pro hac vice*)
                                          Sterne, Kessler, Goldstein & Fox, P.L.L.C.
                                          1101 K St., NW, 10th Floor

Washington, DC 20005
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
mtalley@sternekessler.com
nnowak@sternekessler.com

*Attorneys for Plaintiff BTL Industries, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

       This is to certify that on Thursday October 19, 2023, a true and correct copy of Plaintiff's

Response to 33 Defendants' Motion In Opposition to BTL's Motion for a Preliminary Injunction

was served by electronic mail on the following counsel of record:

Brian K. Telfair, Esq. (VSB Bar No. 40516)
brian@thetelfairlawfirm.com
THE TELFAIR LAW FIRM, LLC
3280 Brook Rd, Ste. 304
Richmond, VA 23227
804-339-0556 (Telephone)
804-597-2364 (Facsimile)

*Attorney for Defendants*

Benjamin B. Solter, Esq.
(Admitted Pro Hac Vice)
bsolter@intelinklaw.com
INTELINK LAW GROUP, PC
421 Huron St., Unit 801
Chicago, IL 60654
(866) 786-4035 (Phone)
(415) 688-2760 (Facsimile)

*Attorney for Defendants*

 /s/ Monica Riva Talley
Attorney
STERNE, KESSLER, GOLDSTEIN &
FOX P.L.L.C.
1101 K Street, NW
10th Floor
Washington, D.C. 20005
Phone: (202) 371-2600
Facsimile: (202) 371-2540

*Attorney for Plaintiff BTL Industries, Inc.*