UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BTL INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A, <br><br> Defendants. | Civil Action No. 1:23-cv-00673-PTG-JFA |

**PLAINTIFF'S SUPPLEMENTAL BRIEF
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................... 1

II. Argument ....................................................................................................................... 2

    A. Service of BTL's Motion for Preliminary Injunction via email was proper. ........................................................................................................... 2

    B. BTL only seeks an injunction for the Defendants' activities that are within the United States. ............................................................................... 3

    C. No bond is required or, in the alternative, a nominal bond is proper. ................... 4

    D. BTL may show knowledge of BTL's patents through circumstantial evidence ................................................................................................... 7

    E. BTL has shown that it is likely to succeed on its Trademark Infringement, Counterfeiting, and False Designation of Origin claims .................. 8

        1. The Defendants that use identical marks are using marks that are confusingly similar to BTL's registered trademarks. .............................. 10

        2. The Defendants that use marks phonetically equivalent to BTL's trademarks are using marks that are confusingly similar to BTL's registered trademarks. .................................................................. 11

        3. The Defendants that use marks that incorporate BTL's trademarks with additional terms are using marks that are confusingly similar to BTL's registered trademarks. ............................................................. 11

        4. The Defendants that use marks that pair BTL's registered EM mark with a word that is synonymous with SCULPT are using marks that are confusingly similar to BTL's registered trademarks. ......... 12

III. Conclusion ................................................................................................................... 13

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arkansas Best Corp. v. Carolina Freight Corp.*,
  60 F. Supp. 2d 517 (W.D.N.C. June 24, 1999) ............................................................................7

*Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*,
  23 Fed. Appx. 134 (4th Cir. 2001) ..............................................................................................6

*Ciena Corp. v. Jarrard*,
  203 F. 3d 312 (4th Cir. 2000) .....................................................................................................2

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ......................................................................................................5

*DSU Medical Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) ..................................................................................................7

*Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equipment Co. Ltd.*,
  No. 11 C 6289, 2012 WL 3544841 (N.D. Ill. Aug. 16, 2012 ......................................................2

*Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equipment Co. Ltd.*,
  759 F.3d 787 (7th Cir. 2014) ......................................................................................................2

*George & Co. LLC v. Imagination Ent. Ltd.*,
  575 F.3d 383 (4th Cir. 2009) ......................................................................................................9

*George Sink PA Injury Lawyers v. George Sink II Law Firm LLC*,
  No. 2:19-cv-01206-DCN, 2019 WL 6318778 (D.S.C. Nov. 26, 2019) ................................6, 7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ....................................................................................................................7

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999) ..................................................................................................4, 5

*Hydraflow Indus. NZ Ltd. v. Individuals*,
  No. 1:22-CV-962-LY, 2022 WL 16625792 (W.D. Tex. Nov. 1, 2022) .....................................3

*International Controls Corp. v. Vesco*,
  490 F.2d 1334 (2nd Cir. 1974) ...................................................................................................5

*Juul Labs, Inc. v. 4X PODS*,
  509 F. Supp. 3d 52 (D.N.J. 2020) ...............................................................................................6

*Kenner Parker Toys Inc. v. Rose Art Industries, Inc.*,
    963 F.2d 350 (Fed. Cir. 1992) ..................................................................................12

*LEGO A/S v. ZURU Inc.*,
    799 Fed. Appx. 823 (Fed. Cir. 2020) .........................................................................4

*Pizzeria Uno Corp. v. Temple*,
    747 F.2d 1522 (4th Cir. 1984) ....................................................................................9

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ................................................................................2, 3

*RXD Media, LLC v. IP Application Development LLC*,
    986 F.3d 361 (4th Cir. 2021) ....................................................................................10

*Sara Lee Corp. v. Kayser-Roth Corp.*,
    81 F.3d 455 (4th Cir. 1996) ........................................................................................9

*Seacret Spa International v. Lee*,
    No. 1:15cv405(JCC/IDD), 2016 WL 880367 (E.D.V.A. March 8, 2016) ...............10

*Select Auto Imports Inc. v. Yates Select Auto Sales, LLC*,
    195 F. Supp. 3d 818 (E.D. Va. July 7, 2016) ...........................................................11

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    No. 3:20-cv-98, 2020 WL 2312030 (E.D. Va. May 8, 2020) ....................................4

*Sweetwater Brewing Co., LLC v. Great Am. Restaurants, Inc.*,
    266 F. Supp. 2d 457 (E.D. Va. 2003) .......................................................................12

*Synergistic Int'l, LLC v. Korman*,
    470 F.3d 162 (4th Cir. 2006) ......................................................................................9

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497-TJS-CE, 2011 WL 3624957 (E.D. Tex. Aug. 17, 2011) ..............7

*Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*,
    87 F. Supp. 2d 567 (E.D. Va. 2000) .........................................................................12

*U.S. Commodity Futures Trading Commission v. Garofalo*,
    No. 10 C 2417, 2010 WL 11245430 (N.D. Ill. Dec. 21, 2010) .................................2

**Other Authorities**

Federal Rule of Civil Procedure 65 .....................................................................................2

I.      **Introduction**

On September 7, 2023, BTL filed a Motion for a Preliminary Injunction seeking an order enjoining the Defendants' manufacture, importation, use, offer for sale, and sale of Counterfeit BTL devices, and requiring various financial platforms through which Defendants conduct their illicit sales to freeze the Defendants' accounts. On October 26, 2023, counsel for BTL and counsel for thirty-three of the Defendants appeared at a hearing in front of the Court regarding the Motion. During the hearing, the Court requested supplemental briefing on several issues from BTL, including (1) whether BTL's Notice of the Motion for Preliminary Injunction is proper, (2) whether BTL's Motion seeks to improperly enjoin activities outside of the Court's jurisdictional reach, (3) the appropriate amount for a bond, (4) whether BTL's proffered evidence of knowledge for induced patent infringement, and (5) the exact nature of each Defendants' trademark infringement.

As discussed in more detail below, the Court may properly grant BTL's Motion for Preliminary Injunction for the following reasons. *First*, notice to Defendants of BTL's Motion via email is proper and the Court has broad discretion to determine what constitutes adequate notice so long as the non-moving party has a reasonable opportunity to respond. *Second*, BTL does not seek to enjoin any activities outside of the Court's jurisdiction. *Third*, because there is no evidence of economic harm, the Court may waive the bond in this case or, alternatively, require a nominal bond. *Fourth*, BTL provided circumstantial evidence sufficient to meet the knowledge requirement under the induced infringement standard. *Fifth*, each Defendant has infringed BTL's trademark rights by using marks that are identical or confusingly similar to BTL's federally registered trademarks.

For the foregoing reasons, discussed in more detail below, BTL respectfully requests the Court grant its Motion for Preliminary Injunction.

## II.     Argument

### A.     Service of BTL's Motion for Preliminary Injunction via email was proper.

BTL's service of its Motion for Preliminary Injunction on Defendants via email was proper and provided sufficient notice to Defendants. Federal Rule of Civil Procedure 65 states that, "[t]he Court may issue a preliminary injunction only on notice to the adverse party." Under Fourth Circuit precedent, "broad discretion is given to the district court" to manage notice for preliminary injunctions "so long as the opposing party is given a reasonable opportunity, commensurate with the scarcity of time under the circumstances, to prepare a defense and advance reasons why the injunction should not issue." *Ciena Corp. v. Jarrard*, 203 F. 3d 312, 319 (4th Cir. 2000). Courts have found that notice via email is sufficient to meet Federal Rule of Civil Procedure 65's notice requirement. *See Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equipment Co. Ltd.*, No. 11 C 6289, 2012 WL 3544841, at *4 (N.D. Ill. Aug. 16, 2012), vacated on other grounds, 759 F.3d 787 (7th Cir. 2014); *U.S. Commodity Futures Trading Commission v. Garofalo*, No. 10 C 2417, 2010 WL 11245430, at *3 (N.D. Ill. Dec. 21, 2010).

*First*, service via email is reasonably calculated to provide notice to the Defendants. As BTL explained in its Motion for Email Service, BTL is unable to confirm the names, identities, or even locations of the Defendants. *See* D.I. 33 at 2. This is a common issue with counterfeiters as they typically try to conceal their identities. *See id.* However, because the counterfeiters require some form of communication with customers to complete their illicit sales, they typically maintain accurate and active email addresses attached to their business accounts. *See id; see also Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1018 (9th Cir. 2002) ("If any method of communication is reasonably calculated to provide [defendant operating online] with notice, surely it is email—the method of communication which [defendant] utilizes and prefers.") Moreover, BTL is unaware of any other reliable way to communicate with the Defendants. *See*

2

*id. Further*, the Court deemed service via email proper for the service of the Complaint and Summons, which requires the same due process standard as notice for a preliminary injunction, i.e., it is reasonably calculated to provide notice. *See Hydraflow Indus. NZ Ltd. v. Individuals*, No. 1:22-CV-962-LY, 2022 WL 16625792, at *4 (W.D. Tex. Nov. 1, 2022) ("Providing notice via email, along with any notice that Defendants receive from the Third-Party Providers, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of this preliminary injunction.").

*Second*, the actions that occurred subsequent to BTL's service of its Motion for Preliminary Injunction confirm that BTL's notice was proper. Thirty-three Defendants responded to BTL's Motion prior to the Preliminary Injunction Hearing. The Defendants' response indicates that Defendants were (1) on notice of BTL's Preliminary Injunction, and (2) had the opportunity to respond.

*Finally*, the Defendants were given a reasonable opportunity to respond to BTL's Motion. BTL filed its Motion for Preliminary Injunction on September 7, 2023. D.I. 91. On September 11, 2023, BTL filed its Notice of Service of Defendants by Email stating that it served each Defendant with Plaintiff's Motion, Plaintiff's Supporting Memorandum, and the Notice of Hearing. D.I. 98. The Preliminary Injunction Hearing occurred on October 26, 2023. The Defendants had over six weeks to respond to BTL's notice of its Motion for Preliminary Injunction.

Because BTL served notice on the Defendants via email with a reasonable amount of time for Defendants to respond, BTL's notice on Defendants was proper.

    **B.    BTL only seeks an injunction for the Defendants' activities that are within the United States.**

In its Motion for Preliminary Injunction, BTL requested that the Court enjoin

3

"Defendants from the manufactur[ing], import[ing], distribut[ing], offering for sale, and [selling] Counterfeit BTL devices, and freezing all PayPal, Alipay, eBay, and Wish accounts associated with the Defendants identified in Schedule A to the Complaint, and restrain and enjoin from transfer any monies in such accounts during the pendency of this litigation." D.I. 91 at 1. During the Preliminary Injunction Hearing, the Court requested that BTL provide supplemental briefing on whether this injunction would improperly cover activities outside the United States. The Court may only enjoin activity within the United States, and BTL's request for an injunction only extends to activity within the Court's jurisdictional reach. In order to further clarify the issue, BTL has submitted a revised Proposed Order.

### C.   No bond is required or, in the alternative, a nominal bond is proper.

Because there is no evidence of likelihood of harm to Defendants, the Court may enter a preliminary injunction without a bond or, in the alternative, a nominal bond. "The party against whom a preliminary injunction is sought has the burden of establishing the amount of a bond necessary to secure against the wrongful issuance of the injunction." *LEGO A/S v. ZURU Inc.*, 799 Fed. Appx. 823, 837–38 (Fed. Cir. 2020); *see also Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:20-cv-98, 2020 WL 2312030, at *4 (E.D. Va. May 8, 2020) ("The burden of establishing the bond amount rests with the party to be restrained, who is in the best position to determine the harm and will suffer from a wrongful restraint."). "[T]he judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n. 3 (4th Cir. 1999). "Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond

accordingly. In some circumstances, a nominal bond may suffice." *Id.* The district court may dispense with security where there has been no proof of a likelihood of harm to the party enjoined. *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2nd Cir. 1974); *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir. 2003) ("[T]he bond amount may be zero if there is no evidence the party will suffer damages from the injunction."). BTL proposes the Court either waive the bond due to lack of evidence or, in the alternative, set a nominal bond of $1,000.

Defendants have the burden of proof in establishing the amount of bond required to enter a preliminary injunction. To date, no evidence of economic harm has been provided by any defendants. Only 33 Defendants responded to BTL's Motion for Preliminary Injunction, and even those 33 Defendants did not request the Court enter a bond or provide any evidence of economic harm the injunction might cause. *See, e.g.*, D.I. 112 at 14 (merely stating, abstractly, that the Defendants will be harmed). Without any economic evidence of economic harm, the Court has no way to calculate the appropriate amount for the bond and, therefore the Court may waive the bond requirement. *See International Controls Corp.*, 490 F.2d at 1356; *Connecticut General Life Ins.*, 321 F.2d at 882.

Alternatively, if the Court believes a bond is necessary, BTL proposes the Court set a nominal bond of $1,000 because any harm to Defendants is remote and BTL has shown a strong likelihood of success on the merits. Indeed, the 33 Defendants contend that they have made few sales into the United States. *See* D.I. 112-1 ¶ 8 (stating no sales occurred in the US); D.I. 112-2 ¶ 8 (stating only two sales have occurred in the US); D.I. 112-3 ¶ 8 (stating only 6 sales totaling less than $66 have occurred in the US); D.I. 112-4 ¶ 7 (stating only two sales totaling $2 in the US); D.I. 112-5 ¶ 7 (stating only 5 sales totaling less than $45 in the US). While BTL questions

5

the veracity of Defendants' statements, by Defendants' own admission, there is nominal harm in issuing an injunction prohibiting Defendants from selling Counterfeit BTL Devices because they are not making substantial sales into the United States. Further, with respect to the Defendants' accounts, BTL is not requesting the Court to do anything more than freeze Defendants' assets, which in itself is not an unduly burdensome harm. *See Juul Labs, Inc. v. 4X PODS*, 509 F. Supp. 3d 52, 79 (D.N.J. 2020) ("The time value of the money might constitute a potential loss from a wrongfully granted injunction. That loss is offset, however, by the fact that the funds will presumably remain precisely where the defendants have placed them, in the individual accounts or elsewhere. If, for example, the funds were accruing interest, they will continue to do so."). Therefore, the injunction will not cause the Defendants severe harm.

Because the Defendants' harm is remote, and because BTL has demonstrated a likelihood of success on the merits, a nominal bond would be sufficient. BTL proposes the imposition of a nominal bond of $1,000. This proposal is consistent with what other courts considering similar circumstances have found was appropriate when the harm to defendants was remote and plaintiffs were likely to succeed on the merits. *See Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 Fed. Appx. 134, 139 (4th Cir. 2001) (affirming $500 nominal bond when defendant "would suffer little harm if enjoined from further selling its infringing [product]"); *George Sink PA Injury Lawyers v. George Sink II Law Firm LLC*, No. 2:19-cv-01206-DCN, 2019 WL 6318778, at *6 (D.S.C. Nov. 26, 2019) (setting a nominal bond of $500 when there was a strong likelihood of success on the merits and the defendants were not at risk of severe harm); *Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 521 (W.D.N.C. June 24, 1999) (setting a nominal bond of $100 when Plaintiffs showed that there was trademark infringement). Therefore, because the risk of harm to the Defendants is remote, and because BTL has shown a

likelihood of success on the merits, BTL's proposal for a nominal bond of $1,000 is proper.

### D. BTL may show knowledge of BTL's patents through circumstantial evidence

BTL has proven that Defendants have the requisite knowledge of the asserted patents through circumstantial evidence. *See DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice."); *see also SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJS-CE, 2011 WL 3624957, at *2 (E.D. Tex. Aug. 17, 2011) ("Knowledge may be proven by either direct or circumstantial evidence."). Notably, the knowledge requirement of induced infringement can also be found through willful blindness, i.e., the accused infringer is aware of a high probability of the existence of relevant patents and takes affirmative actions to avoid learning of them. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).

Here, BTL presented enough evidence to show that Defendants either knew about BTL's patents or, at the very least, were willfully blind to BTL's patents. As stated in BTL's declaration, the EMSCULPT device is the first of its kind, and the most popular FDA-cleared non-invasive electromagnetic body contouring device that tones muscles. D.I. 123-1 ¶ 11. Therefore, it is highly unlikely that the Defendants, who sell counterfeit EMSCULPT and copycat devices in the non-invasive body contouring space, have not reviewed or seen the EMSCULPT device. Further supporting Defendants' knowledge of the EMSCULPT device includes the fact that the Defendants are copying BTL's trademarks and marketing materials. *See infra* Section E. For example, Karina Beauty Store lists the "EMSCULPT Machine" in its listing of available devices. *See* D.I. 21-5 at 194, 196. In addition, the store attributes the EMSCULPT device's awards to the counterfeit device. *See id.* at 196 (alleging that the counterfeit device won the "Most Worth It," "New Beauty," and "The Aesthetic Awards" awards). Further, Karina Beauty Store uses BTL's graphics to market the counterfeit device, including the clinical study

7

results from BTL's clinical studies on the EMSCULPT device. *See id.* at 198–99. The use of BTL's materials to market the counterfeit devices indicates that the Defendants are well aware of the EMSCULPT device.

In addition, the non-invasive body contouring industry is small, and the competitors in the space routinely protect their inventions with patents. D.I. 123-1 ¶ 10. Accordingly, it is highly likely that the Defendants were aware that the EMSCULPT device would be covered by patents. BTL also marks its devices with their corresponding patents online. *Id.* ¶ 12. Therefore, it is highly likely that the Defendants knew that the asserted patents covered the EMSCULPT device. This is especially so because, in this small industry, it is common practice to conduct a patent landscape search before competing in the industry. *Id.* ¶ 10. Thus, BTL has presented enough evidence to show that the Defendants were either aware of BTL's patents or they were willfully blind to BTL's patents.

### E.   BTL has shown that it is likely to succeed on its Trademark Infringement, Counterfeiting, and False Designation of Origin claims.

BTL is likely to succeed on its claims for trademark infringement, counterfeiting, and false designation of origin, because Defendants use identical marks and/or marks that are confusingly similar to BTL's federally registered marks to promote the sale of medical aesthetic devices.

To succeed on each claim, Plaintiff must demonstrate that (1) it has valid and protectable trademark rights, and (2) the Defendants use identical or confusingly similar marks that are likely to confuse consumers as to the source of the goods. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). For purposes of this supplemental brief, BTL is providing additional analysis regarding whether the marks used by Defendants are likely to confuse consumers.

The nature and extent of each Defendant's infringing activity varies, but they all infringe BTL's trademark rights through their use of identical and/or confusingly similar marks. Many of the Defendants also use edited versions of BTL's marketing materials to promote their infringing devices. Attached as Exhibit 1 are examples of BTL's marketing materials for its EMSCULPT NEO Devices. As depicted in the two images below, many Defendants (typical example on left) will replace BTL's federally registered EMSCULPT NEO trademark with EMSLIM NEO, and BTL's federally registered HIFEM trademark with HIEMT (BTL's image on right).



*See* D.I. 21-8 at 206 and Ex. 1. Attached as Exhibit 2 are charts that list all the identical and confusingly similar marks that each Defendant displays on their store pages, and screenshots of examples of this use. Additionally, for the 33 Defendants who oppose the Preliminary Injunction, BTL has provided an additional Exhibit that outlines the full extent of their infringing conduct.

9

*See* Exhibit 3.

In determining whether a mark is confusingly similar, courts focus on the similarities in sight, sound, and meaning. *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 396 (4th Cir. 2009). It is not necessary that the marks be identical. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 465 (4th Cir. 1996) (finding that "L'eggs" is confusingly similar to "Leg Looks"); and *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1525, 1535 (4th Cir. 1984) (finding "Pizzeria Uno" confusingly similar to "Taco Uno" because both marks share the predominant term "UNO").

Here, Defendants use a variety of marks to promote their aesthetic devices, but they can be broken down into four different categories: (1) marks that are identical to BTL's trademarks; (2) marks that are phonetically equivalent to BTL's trademarks, with slight spelling variations; (3) marks that incorporate BTL's trademarks with additional terms; and (4) marks that pair BTL's registered EM mark with a word that is synonymous with SCULPT.

### 1. The Defendants that use identical marks are using marks that are confusingly similar to BTL's registered trademarks.

BTL owns federal trademark registrations for the following marks at issue in this case: EMSCULPT (U.S. TM Reg. No. 5,572,801); EMSCULPT NEO (U.S. TM Reg. No. 6,373,947); EMTONE (U.S. TM Reg. No. 6,062,248); EMFACE (U.S. TM Reg. No. 6,891,006); EM (U.S. TM Reg. No. 5,915,636); EM (Stylized) (U.S. TM Reg. No. 6,206,098); HIFEM (U.S. TM Reg. No. 5,688,619); and BTL (Stylized) (U.S. TM Reg. No. 4,750,101. *See* Compl. ¶ 14.

For the Defendants that use identical marks, the analysis is simple because the marks they are using are identical in sight, sound, and meaning. *See RXD Media, LLC v. IP Application Development LLC*, 986 F.3d 361, 374 (4th Cir. 2021) (finding Defendant's use of identical "ipad" mark confusingly similar).

      **2.**      **The Defendants that use marks phonetically equivalent to BTL's trademarks are using marks that are confusingly similar to BTL's registered trademarks.**

Marks that are highly similar in appearance and phonetically equivalent are confusingly similar. *See Seacret Spa International v. Lee*, No. 1:15cv405(JCC/IDD), 2016 WL 880367, at *4 (E.D.V.A. March 8, 2016) (finding SECRET and SEACRET were confusingly similar because they were similar in spelling and phonetically equivalent).

Here, Defendants use a variety of marks that are nearly visually and aurally identical to BTL's registered trademarks, with only slight spelling variations likely crafted to evade online trademark monitoring programs. These marks include: EM SCULPT, EMS SCULPT, EMSSCULPT, EM-SCULPT, EMS-CULPT, EMS CULPT, HI-FEM, and HIFM. Each of these marks is aurally identical to either BTL's EMSCULPT or HIFEM trademarks. Further, they are nearly identical in appearance as the only differences are the additions of a single letter, space, or hyphen, or the removal of a single letter. These small changes were likely implemented to avoid BTL's counterfeit monitoring efforts.

Accordingly, these marks are also confusingly similar to BTL's registered trademarks.

      **3.**      **The Defendants that use marks that incorporate BTL's trademarks with additional terms are using marks that are confusingly similar to BTL's registered trademarks.**

Defendants also use a variety of marks that are nearly phonetic equivalents despite the use of additional lettering or spelling variations. Where the predominant portion of a mark is overlapping, the marks are still confusingly similar. *See Select Auto Imports Inc. v. Yates Select Auto Sales, LLC*, 195 F. Supp. 3d 818, 835 (E.D. Va. July 7, 2016) (finding YATES SELECT AUTO SALES confusingly similar to SELECT AUTO IMPORTS due to both marks sharing the words "SELECT AUTO").

The marks used by Defendants in this category include: EMSCULPTING, EMS

11

SCULPTING, EMS-CULPTING, EMSCULPTURE, EMSCULPTOR, EMS SULPTING, EMSCUPLT, EMS SCULPT U, EMS FACE, EMS-FACE, HIPEM, and HIEM.

The marks EMSCULPTING, EMS SCULPTING, EMS-CULPTING, EMSCULPTURE, EMSCULPTOR, EMS SULPTING, EMSCUPLT, and EMS SCULPT U, are all confusingly similar to BTL's registered EMSCULPT trademark. They are all nearly identical in sound, appearance, and meaning, and the additional elements in these marks do not distinguish these marks in any way.

Similarly, the marks EMS FACE and EMS-FACE are confusingly similar to BTL's federally registered EMFACE trademark. The addition of the letter S and a space or hyphen does little to distinguish these marks from the EMFACE mark in sight, sound, or meaning.

The marks HIPEM and HIEM are also confusingly similar to BTL's federally registered HIFEM trademark. These marks are again nearly identical in sound and appearance to BTL's federally registered HIFEM mark.

In each case, the similarities in overall appearance, pronunciation, meaning, and commercial impressions of these variations are sufficient to create a likelihood of confusion.

        **4.     The Defendants that use marks that pair BTL's registered EM mark with a word that is synonymous with SCULPT are using marks that are confusingly similar to BTL's registered trademarks.**

Lastly, it is not necessary that Defendant's use marks that are identical to those of Plaintiff's. Where a Defendant uses marks that are similar in meaning, they are still confusingly similar. *See Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 581–82 (E.D. Va. 2000) (finding the mark GREAT MINDS OF MEDICINE "extremely similar" to the mark GREAT MINDS OF THE WESTERN INTELLECTUAL TRADITION); *see also Sweetwater Brewing Co., LLC v. Great Am. Restaurants, Inc.*, 266 F. Supp. 2d 457, 462–63 (E.D. Va. 2003) (finding the SWEETWATER TAVERN mark sufficiently similar to SWEETWATER

12

BREWING COMPANY mark); *see also Kenner Parker Toys Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 354–55 (Fed. Cir. 1992) (finding PLAY-DOH and FUN DOUGH confusingly similar in part because PLAY and FUN convey a similar impression).

Here, Defendants use a variety of marks that comprise BTL's federally registered EM mark (often mimicking BTL's registered, stylized form of the mark) paired with an additional term that is similar in meaning to BTL's EMSCULPT and EMTONE marks. These marks include: EMSLIM, EMSLIM NEO, EMSLIMNEORF, EMS LIM, EMSIIM, EMSLIMF, EMS SLIMMING, EMSLIMMING, EMSZERO, EMS MUSCLE, EMSHAPE, and EMSHAPING.

All of these marks are confusingly similar in overall meaning and commercial impression to BTL's federally registered EMSCULPT, EMSCULPT NEO, and EMTONE trademarks. All of the infringing marks pair BTL's registered EM (and often EM (Stylized)) mark with a suffix associated with fitness and weight loss. Some of the marks use slight spelling variations, such EMS LIM, or EMSLIMMING, but these variations do not change the overall meanings of the marks.

Furthermore, these marks typically appear on the knockoff machines in the same location, and in the same font and color, as BTL's EMSCULPT mark.

In sum, all of the Defendants, whether through the use of identical or confusingly similar marks, infringe BTL's registered trademarks.

### III. Conclusion

For the foregoing reasons, BTL requests that this Court issue a preliminary injunction enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit devices within the United States and freezing all PayPal, AliPay, eBay, and Wish accounts associated with Defendants and restrain and enjoin from transfer any monies in such

accounts during the pendency of this litigation.

Date: November 6, 2023 	Respectfully submitted,

	 /s/ Monica Riva Talley
	Monica Riva Talley (VSB No. 41840)
	Nicholas J. Nowak (*pro hac vice*)
	STERNE KESSLER GOLDSTEIN & FOX P.L.L.C.
	1101 K St., NW, 10th Floor
	Washington, DC 20005
	Telephone No.: (202) 371-2600
	Facsimile No.: (202) 371-2540
	mtalley@sternekessler.com
	nnowak@sternekessler.com

	*Attorneys for Plaintiff BTL Industries, Inc.*

15